# Richmond

## J. A. Foust Coal Company and Coal Operators Casualty Company v. Matt Messer.

March 15, 1954.

Record No. 4199.

Present, All the Justices.

The opinion states the case.

*Greear, Bowen, Mullins & Winston,* for the appellants.

*G. Mark French, Robert Lewis Young* and *Bremner & Young,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

Matt Messer, hereinafter referred to as claimant, suffered a compensable injury on April 13, 1951, while working for J. A. Foust Coal Company, herein referred to as employer. On May 9, 1951, a memorandum of agreement was executed under Code, § 65-90, between claimant and employer. The agreement was approved by the Industrial Commission in an award dated June 1, 1951, which ordered payment of compensation at the maximum rate of $20 per week under Code, § 65-51, dealing with total incapacity for work.

The payments so ordered were made until March 3, 1952, at which time the employer filed with the Commission an application for hearing under § 65-95, alleging that there had been a change in the condition of claimant from total incapacity for work to that of partial incapacity compensable under § 65-52.

The application was heard by a hearing commissioner on September 13, 1952, and an award was entered which directed payment of compensation under § 65-52 at the rate of $7.73 per week during the remainder of the three hundred week period based on a finding of a 33 1/3 per cent general partial disability.

To review this ruling claimant sought a hearing before the

full Commission as provided in § 65-93. The case was heard on June 10, 1953, and a majority of the Commission (Commissioner Nickels dissenting) entered an award reversing the hearing commissioner, finding that the claimant had a general partial disability of 33 1/3 per cent as a residual of his accidental injury of April 13, 1951; that as a result he was unable to perform his usual work; that the claimant had not been offered or procured selective work within his capacity; that he had been unable to find selective work elsewhere; "and that the wage loss by reason of the partial incapacity is total, in a sum sufficient to yield maximum benefits." Therefore the Commission held that the award should be modified and the employer ordered to pay claimant $20 per week beginning March 3, 1952, for the remainder of the three hundred week period, "unless subsequent conditions shall justify a modification hereof". From the award the employer prosecutes this appeal.

The employer charges that it was error for the Commission to base its award upon actual loss of earnings rather than upon claimant's loss of ability, power or capacity to earn.

The evidence consisted of several medical reports and the claimant's own statement as to his present condition. Dr. H. H. Wescott, in a report dated February 7, 1952, expressed the opinion that claimant had a general disability of 33 1/3 per cent. Dr. E. L. Gage, in a report dated September 23, 1952, after making some negative findings, stated: "Examination showed a very tremulous, edentulous man of about the stated age of 45 years. * * * As far as the neurological examination went, I could not demonstrate any organic evidence of true cord compression. There was evidence of hypertension, a very marked nervousness and obvious anxiety and verbosity. Certainly from the standpoint of employability the man is disabled, both because of his hypertension and his overall general reaction."

The record shows that claimant at the time of the accident was a timber man in the mine of employer. His

duties required him to set the heavy shoring columns and timbers. According to his testimony he was injured by a falling rock "about six inches thick, about six feet long", which "hit me on top of the head, went down my left side". Claimant stated that he was presently unable to do any work.

The Commission found, as aforesaid, that "the wage loss by reason of the partial incapacity is total"; nevertheless, it found this to be "A case for determination under section 65-52 of the Act". The assignment of cross error also challenged this finding.

When the employer called for a hearing under § 65-95, alleging a change in claimant's condition, the burden of proof was upon it to show that there was such a change as would affect the claimant's ability to earn wages. While it is true that the medical reports indicate a partial physical disability, such are not necessarily proof positive that the claimant can work and earn wages as is argued by the employer. There is ample evidence, both from the medical reports and from claimant's own statement, to show that at the time of the hearing he was totally incapacitated, and when the Commission so found it should have held that no change in claimant's previously established total incapacity, such as is contemplated by the statute, had occurred, and the employer having failed in carrying the burden of proof, its application for a change in the prior award should have been denied, thus leaving claimant's award under § 65-51 which provides for total incapacity.

The Commission properly gives great weight to medical evidence in determining incapacity, but it is not conclusively bound by such evidence. Medical evidence is not the sole criterion. There have been and probably will continue to be cases where the medical evidence shows only a percentage of disability when in truth and in fact the disability so found renders the claimant incapable of working and therefore incapable of earning any wages. The loss of earning power as the result of an injury is not necessarily

proportional to the bodily functional disability. This interpretation of the Act is more in keeping with its humane legislative purpose than is the construction contended for by the employer that the Commission is bound by the percentage of disability found by medical evidence and that such evidence shall bind the Commission to the exclusion of all other facts and circumstances surrounding the claim.

Benefits awarded under §§ 65-51 and 65-52 cover losses occasioned by the impairment of the claimant's earning capacity. The first section (65-51) applies where the loss is total, and the second (65-52) where it is partial. In either case the extent of incapacity must be ascertained from the evidence, and such evidential ascertainment is not limited to or circumscribed by any special class of proof. All legal facts and circumstances surrounding the claim should properly be considered and due weight given them by the Commission.

When considering benefits under § 65-53, which covers "loss or loss of use" of a bodily member, a different situation arises. Under this section the benefits provided for are fixed and payable regardless of the degree of disability and are not contingent upon employment, loss of wages or like considerations. A claimant's injury is more or less rated in the various schedules in § 65-53, but there is no statutory requirement either under § 65-51 or § 65-52 that a claimant's injury be medically rated. As heretofore stated, under these sections, if the Commission finds from all the facts and circumstances surrounding the claim that claimant's loss of earning power is total he receives compensation under § 65-51; whereas, if the loss of earning power is found to be partial he receives compensation under § 65-52.

In Horovitz, Injury and Death under Workmen's Compensation Laws, it is said:

"One who has only a partial physical disability may obtain total incapacity payments on proof that he was unable to market his remaining capacity for work. (Page 270) * * * (W)here the injuries are so serious that it is obvious

ordinary employment is out of the question, and there is no affirmative evidence to show a job was available, a denial of a total and permanent award will be reversed as a matter of law." (Page 279)

In Schneider, Workmen's Compensation Law, 2nd Ed., Vol. 2, § 418, at page 1428, it is said:

"An employee may be said to be totally incapacitated when he is disqualified from pursuing the usual tasks of a workman in such a way as to enable him to procure and retain employment. The fact that he is not absolutely disabled for the performance of any kind of labor is not a prerequisite to a finding of total incapacity."

In Larson's Workmen's Compensation Law, Vol. 2, § 57.10, appears the following:

"It has been stressed repeatedly that the distinctive feature of the compensation system, by contrast with tort liability, is that its awards (apart from medical benefits) are made, not for physical injury as such, but for 'disability' produced by such injury. The central problem, then, becomes that of analyzing the unique and rather complex legal concept which, by years of compensation legislation, decision and practice, has been built up around the term 'compensable disability'.

"The key to the understanding of this problem is the recognition, at the outset, that the disability concept is a blend of two ingredients, whose recurrence in different proportions give rise to most controversial disability questions: the first ingredient is disability in the medical or physical sense, as evidenced by obvious loss of members or by medical testimony that the claimant simply cannot make the necessary muscular movements and exertions; the second ingredient is *de facto* inability to earn wages, as evidenced by proof that claimant has not in fact earned anything."

Accordingly, we are of the opinion that the Commission properly found that claimant's wage loss was total by reason of the partial physical incapacity, yielding the maximum benefits under the Act. As indicated, however, the Com-

mission should have determined, for the reasons aforesaid, that there had been no change in claimant's condition as contemplated by the statute (§ 65-95), and the prior award should not have been disturbed.

The employer also contends that it is not obligated under § 65-60 to offer selective employment to or find selective employment for the claimant as was held by the Commission. The employer subscribes to the dissenting opinion which says, "(T)he Commission * * * has treated section 65-60 as a rehabilitative measure to restore function and eliminate malingering, at the discretion of the employer by tendering selective work in a proper case. There is nothing in the section to indicate selective work must be procured as a condition precedent to exercising the rights granted upon a change in condition."

We agree that no such mandatory requirement is placed upon an employer. The section states: "If an injured employee refuses employment procured for him suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal unless in the opinion of the Industrial Commission such refusal was justified." In the instant case the employer charges that the claimant, "like all malingerers, would like to convert the * * * Act into a retirement fund", and that "twenty or twenty-five dollars a week over a period of approximately ten years would be a sizable pension". In the face of this rather harsh accusation the Commission might reasonably have expected the employer to avail itself of this "rehabilitative measure" ordained to "restore function and eliminate malingering" in order to put a stop to claimant's alleged iniquitous scheme. But such was not done. As aforesaid, the burden of proof was on the employer to show under § 65-95 that there had been a change in the condition of the claimant—such a change as would enable him at least to do some kind of selective work within his then capacity. The employer did not attempt to prove nor did it suggest that such selective work was available. It is true, as stated,

that § 65-60 does not require that the employer make such work available, but the section expressly authorizes the employer to make the gesture. Under such circumstances it is to be presumed that if selective work had been available the claimant would have taken advantage of it.

We are of opinion that the award appealed from be modified as indicated and affirmed.

*Modified and affirmed.*