DILLARD ET AL. *v.* INDUSTRIAL COMMISSION OF VIRGINIA ET AL.

No. 73–5412. Argued March 26, 1974—Decided May 15, 1974

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, WHITE, MARSHALL, BLACKMUN, and REHNQUIST, JJ., joined. DOUGLAS, J., filed a dissenting opinion, *post*, p. 799.

*John M. Levy* argued the cause for appellants. With him on the briefs was *George S. Newman*.

*Stuart H. Dunn*, Assistant Attorney General of Virginia, argued the cause for appellees Industrial Commission of Virginia and individual Commissioners. With him on the brief were *Andrew P. Miller*, Attorney General, and *William E. O'Neill, Jr. J. Robert Brame III* argued the cause for appellee Aetna Casualty & Surety

Co. With him on the brief were *William H. King* and *Willard I. Walker.*[*]

MR. JUSTICE POWELL delivered the opinion of the Court.

Appellants seek to establish that, under the Due Process Clause of the Fourteenth Amendment, Virginia may not permit the suspension of workmen's compensation benefits without a prior adversary hearing. A three-judge United States District Court, over one dissent, rejected appellants' constitutional arguments. 347 F. Supp. 71 (ED Va. 1972). We noted probable jurisdiction. 414 U. S. 1110 (1973). Although the parties have focused primarily on the due process issue, the briefs and oral arguments have indicated that under state law a claimant whose workmen's compensation benefits have been suspended may have them reinstated by a state trial court pending a full administrative hearing on the merits of his claim. If this is an accurate reading of state law, it is in all probability unnecessary to address any questions of federal constitutional law in this case. Accordingly, the case must be remanded to the District Court for reconsideration.

I

This litigation has centered on the role of the Industrial Commission of Virginia (Commission) in overseeing relationships between workmen's compensation claimants and employers or the employers' insurance companies.

---

[*] *J. Albert Woll, Bernard Kleiman, Stephen P. Berzon,* and *Stefan M. Rosenzweig* filed a brief for American Federation of Labor and Congress of Industrial Organizations et al. as *amici curiae* urging reversal.

*James F. Fitzpatrick* and *David Bonderman* filed a brief for the American Insurance Assn. et al. as *amici curiae* urging affirmance.

Although the Virginia system for workmen's compensation is controlled in all significant respects by an extensive statutory scheme referred to as the Act, Va. Code Ann. § 65.1–1 *et seq.* (1973 and Supp. 1973),[1] it operates in a largely voluntary manner through memoranda of agreement between disabled workmen and employers or insurance companies. Compensation is paid out of private funds, in some cases through self-insurance by employers but for the most part through coverage by private insurance companies. All agreements between employees and employers or insurance companies must be approved by the Commission, which may extend its imprimatur "only when the Commission, or any member thereof, is clearly of the opinion that the best interests of the employee or his dependents will be served thereby . . . ." § 65.1–93.

In most instances the parties agree voluntarily on entitlement to benefits.[2] When this does not occur, the Commission will grant a hearing to resolve the disagreement, § 65.1–94, and will make an award if found to be due. § 65.1–96. The Commission's awards are subject to review by appeal to the Virginia Supreme Court and, if unchallenged, are conclusive until changed by the

---

[1] The Act defines the relevant employment relationships, §§ 65.1–3 to 65.1–5, types of compensable disabilities, §§ 65.1–7 and 65.1–46, levels of compensation, §§ 65.1–54 to 65.1–57, 65.1–65 to 65.1–65.1, and 65.1–70 to 65.1–71, and the like. Participation in the Virginia system is mandatory for all employees and employers covered by the Act. § 65.1–23, as amended. The Act has been in force since 1918. Its history and general structure are described in the District Court's opinion. See 347 F. Supp. 71, 72–73 (ED Va. 1972).

[2] An *amicus* brief indicates that in the years 1967 to 1971 approximately 95% of all claims for workmen's compensation were resolved by voluntary agreement. Brief for American Insurance Association et al. 10.

Commission. § 65.1–98.[3] The Commission has no enforcement power *per se*. Rather, the Act provides:

> "Any party in interest may file in the circuit or corporation court of the county or city in which the injury occurred, or if it be in the city of Richmond then in the circuit or law and equity court of such city, a certified copy of a memorandum of agreement approved by the Commission, or of an order or decision of the Commission, or of an award of the Commission unappealed from, or of an award of the Commission affirmed upon appeal, whereupon the court, or the judge thereof in vacation, shall render judgment in accordance therewith and notify the parties. Such judgment shall have the same effect, and all proceedings in relation thereto shall thereafter be the same, as though such judgment had been rendered in a suit duly heard and determined by the court. . . ." § 65.1–100.

The state courts have construed their enforcement duty under § 65.1–100 as purely ministerial. They do not inquire into whether a claimant's condition continues to justify compensation. Rather, they simply enforce agreements and awards that have been approved and not formally rescinded by the Commission.[4] Thus,

---

[3] The Virginia Supreme Court accords substantial weight to the Commission's findings of fact, *e. g.*, *LeWhite Constr. Co.* v. *Dunn,* 211 Va. 279, 176 S. E. 2d 809 (1970), and restricts its review primarily to questions of law. Cf. *Brown* v. *Fox,* 189 Va. 509, 54 S. E. 2d 109 (1949).

[4] See *Richmond Cedar Works* v. *Harper,* 129 Va. 481, 492–493, 106 S. E. 516, 520 (1921):

"Section 62 [the predecessor to § 65.1–100 of the Act] was clearly enacted for the purpose of providing a means not only of enforcing an award which had been affirmed on . . . appeal, but also all other final awards of the commission from which there had been no

a workmen's compensation claimant in Virginia has at his disposal a ready mechanism in the state trial courts to enforce any facially valid award or agreement. Since judicial enforcement is a ministerial act, this relief appears to be available with a minimum of delay or procedural difficulty.

Termination of benefits due to a change in a claimant's condition, like the commencement of benefits in the first instance, is a product of voluntary agreement in most cases. But when a dispute arises over a claimant's condition and his continued entitlement to benefits, the only avenue open to an employer for extinguishing a claimant's enforcement rights under § 65.1–100 of the Act appears in § 65.1–99. See *Bristol Door Co.* v. *Hinkle,* 157 Va. 474, 161 S. E. 902 (1932). This section provides, in relevant part:

> "Upon its own motion or upon the application of any party in interest, on the ground of a change in

appeal, as well as all agreements between the parties approved by the commission. When this section is invoked, however, the rights of the claimants have already been established. The proceeding then resembles a motion under our statute for execution upon a forthcoming or delivery bond. . . . [A]ll of the rights of the parties having been previously litigated and determined, the court is required to render judgment in accordance either with (a) the agreement of the parties, which has been approved by the commission, (b) an award of the commission which has not been appealed from, or (c) an award of the commission which has been previously affirmed upon appeal. At this stage of the proceeding, the court is vested with no discretion; the statute is mandatory, and the refusal to render such judgment as that section requires could be compelled by mandamus. . . . The order of the court under section 62 in rendering judgment so that execution may be had, is the exercise of a ministerial function, and the mere method provided by the legislature for enforcing the collection by legal process of the amount already legally ascertained to be due . . . ."
Accord, *Parrigen* v. *Long,* 145 Va. 637, 134 S. E. 562 (1926).

condition, the Industrial Commission may review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded . . . . No such review shall affect such award as regards any moneys paid . . . ." Va. Code Ann. § 65.1–99 (1973).[5]

Although it may be indisputable that a claimant is no longer entitled to benefits due to a change in his condition, if the claimant refuses to terminate voluntarily an award or agreement, an employer or insurer appears to have no defense against a state court enforcement action until there is a formal determination by the Commission under this section. *E. g., Manchester Bd. & Paper Co.* v. *Parker,* 201 Va. 328, 111 S. E. 2d 453 (1959).[6] If an employer or insurance company meets the requirements established by the Commission for invoking its review under this section, the Commission in due course will

---

[5] Although § 65.1–99 refers specifically to awards, it has been interpreted as applying also to voluntary agreements that have been approved by the Commission. See *Manchester Bd. & Paper Co.* v. *Parker,* 201 Va. 328, 111 S. E. 2d 453 (1959).

[6] In the *Manchester* case, a claimant and an insurance company entered into an agreement to pay benefits, which the Commission approved. The employee then returned to work, rendering himself technically ineligible for benefits. The insurance company suspended payments and commenced proceedings leading to a determination under what is now § 65.1–99 of the Act, but it failed to adhere precisely to the requirements of the Commission under that section. One year after the employee returned to work, the Commission refused to rescind the agreement, concluding that the insurance company had failed to comply with § 65.1–99 as implemented by the Commission. On appeal, the Virginia Supreme Court affirmed. It held that § 65.1–99 was the exclusive statutory means for rescinding an agreement approved by the Commission and that employers and insurance companies failed to follow that section at their own risk, without regard to the actual status of a claimant.

conduct a hearing, with notice and the right to participate extended to all parties.[7] At such a hearing, the employer or insurer bears the burden of proving a change in a claimant's condition that justifies rescission of an award or agreement. *E. g., Virginia Oak Flooring Co. v. Chrisley*, 195 Va. 850, 80 S. E. 2d 537 (1954); *J. A. Foust Coal Co. v. Messer*, 195 Va. 762, 80 S. E. 2d 533 (1954).

The last sentence of the above quotation from § 65.1–99 prevents an employer or insurance company from recovering benefits erroneously paid prior to the Commission's formal termination of an award or agreement. See *Gray v. Underwood Bros.*, 164 Va. 344, 182 S. E. 547 (1935). Accordingly, an employer or insurer with cause to believe that a claimant is no longer entitled to benefits has an obvious incentive unilaterally to cease payment at the time it seeks a § 65.1–99 hearing before the Commission. If the Commission ultimately holds in its favor, the employer or insurer will not be required to pay any further benefits, and it will have protected itself against unmerited payments in the period prior to the Commission's full hearing. If the Commission rules against it, it will be required to reinstate benefits retroactively to the date of the application for a hearing, but at least it will have avoided paying benefits for which there was no true legal obligation.

In order to police this tendency of employers and insurers to terminate first and litigate later, the Commission promulgated its Rule 13. See *Manchester Bd. &*

---

[7] There is no dispute in the instant case that the full hearing the Commission ultimately conducts before it formally terminates an award or agreement under § 65.1–99 of the Act satisfies the requirements of the Due Process Clause of the Fourteenth Amendment. Appellants' attack has been directed only at suspensions of benefits prior to the Commission's final hearing.

*Paper Co. v. Parker, supra.*[8]  Rule 13 sets forth certain requirements that an employer or insurer must meet, with precision, see *ibid.*, before it can obtain the § 65.1–99 hearing which is a prerequisite to formal termination of an award or agreement on the ground of change in condition.[9]  For example, the Rule requires employers and

---

[8] "The reason for the rule is stated in the opinion of the Commission as follows:

" 'More than thirty years ago when it was found by the Commission that some employers were arbitrarily disregarding the effect of outstanding awards and terminating payments directed by such awards, [Rule 13] . . . was promulgated . . . . The Rule has since been continuously in force.' "  201 Va., at 331, 111 S. E. 2d, at 456.

Rule 13 was promulgated pursuant to the general rulemaking authority vested in the Commission by the Act.  Section 65.1–18 of the Act provides, in part: "The Commission may make rules, not inconsistent with this Act, for carrying out the provisions of this Act."  The state courts have held that Rule 13 is a valid exercise of the Commission's rulemaking authority.  See *Manchester Bd. & Paper Co. v. Parker, supra.*

[9] Commission Rule 13 provides:

"Applications for Review on Ground of Change in Condition.—Applications for review under § 65.1–99 of the Act must be in writing and state the ground relied upon for relief.  Reviews of awards on the ground of a change in condition shall be determined as of the date of the filing of the application in the offices of the Commission, except as provided in paragraphs two and three hereof.

"All applications for hearing by an employer or insurer under § 65.1–99 shall show the date through which compensation benefits have been paid.  No application shall be considered by the Commission until all compensation under the outstanding award has been paid to the date such application is filed with the Commission.  Except, that in any case in which the employee has actually returned to work or has refused employment (§ 65.1–63), medical attention (§ 65.1–88), or medical examination (§ 65.1–91), compensation may be terminated as of the date the employee returned to work or refused employment, medical attention or medical examination, or as of a date fourteen days prior to the date the application is filed, whichever is later.  In such cases the application will be considered and determined as of the date of return to work, or refusal, or as

insurers to continue benefits up to a defined date. And since April 1, 1972, the Rule has imposed the following requirements on such applications:

> "All applications by an employer or insurer shall be under oath and shall not be deemed filed and benefits shall not be suspended until the supporting evidence which constitutes a legal basis for changing the existing award shall have been reviewed by the Commission, or such of its employees as may be designated for that purpose, and a determination made that probable cause exists to believe that a change in condition has occurred."

Thus, under Rule 13, as amended, an employer or insurer must pay benefits up to a certain date, must make application under oath, and must submit "supporting evidence which constitutes a legal basis for changing the existing award . . . ." If these requirements are met and if the Commission finds that "probable cause exists to believe that a change in condition has occurred . . . ," the employer or insurer will be accorded a hearing that may lead to rescission of the prior award or agreement. If the Rule 13 requirements are not met, the request for a hearing will be denied, and the award or agreement at

---

of a date fourteen days prior to the date the application is filed, whichever is later. All applications by an employer or insurer shall be under oath and shall not be deemed filed and benefits shall not be suspended until the supporting evidence which constitutes a legal basis for changing the existing award shall have been reviewed by the Commission, or such of its employees as may be designated for that purpose, and a determination made that probable cause exists to believe that a change in condition has occurred.

"All applications for hearing by an employee on the ground of further work incapacity shall be considered and determined as of the date incapacity for work actually begins, or as of a date fourteen days prior to the date the application is filed, whichever is later."

issue will remain subject to enforcement in the state courts.

## II

Appellant Dillard was the original named plaintiff in this class action under 42 U. S. C. § 1983. He contended that the Due Process Clause of the Fourteenth Amendment prevented Virginia from permitting the suspension of workmen's compensation benefits without notice to the claimant and an adversary hearing at the time the Commission makes a probable cause determination pursuant to Rule 13. A three-judge United States District Court, over one dissent, rejected this argument on the merits. 347 F. Supp. 71 (ED Va. 1972). Dillard appealed, but then settled his claim, and we remanded the case for a determination of mootness. 409 U. S. 238 (1972). In an unreported order, the District Court subsequently permitted the intervention of appellant Williams and reinstated its published opinion. Williams then appealed, bringing up the due process arguments initially espoused by Dillard.

Appellant Williams was injured in the course of employment in April 1972. In May 1972, the Commission approved an agreement between Williams and his employer's insurance company, one of the appellees herein, for the payment of weekly compensation benefits. In October 1972, the insurance company applied under Rule 13 to the Commission for a hearing to determine whether Williams' disability had ended. Simultaneously, the insurer discontinued payments. Within a few days the Commission made an *ex parte* determination that probable cause existed to believe that a change in Williams' condition had occurred. At this point, Williams made no effort to petition a state court under § 65.1–100 of the Act to reinstate benefits pending the Commission's full hearing. In December 1972, the Commis-

sion conducted an adversary hearing, concluded that the insurance company had not met its burden of proof, and reinstated benefits. On April 17, 1973, the insurance company again petitioned the Commission, claiming a change in Williams' condition. The Commission once more found probable cause on an *ex parte* basis, and the company for the second time terminated benefits. Williams again did not resort to the state trial courts for an enforcement order. Approximately two months later, the District Court permitted Williams to intervene in this lawsuit and, as noted, reinstated its published opinion. Williams then brought this appeal.[10]

Williams' constitutional attack on the Virginia system for suspending workmen's compensation benefits is premised on the assumption that Rule 13, as amended, permits an employer or insurer to shield itself from a state court enforcement suit under § 65.1–100 of the Act in the interim between a probable cause determination

---

[10] State proceedings relating to Williams' entitlement to benefits continued after he was permitted to intervene in this case. In September 1973, following an adversary hearing, the Commission formally terminated Williams' right to benefits. Williams appealed the Commission's ruling to the Virginia Supreme Court. On that appeal, he apparently sought review only of the accuracy of the Commission's determination that he was no longer disabled. In an unreported order issued in December 1973, the Virginia Supreme Court affirmed the Commission's ruling. Williams then filed a petition for certiorari in this Court seeking review of the state court holding. That petition, which is pending, No. 73–6431, *Williams v. Richmond Guano Co.*, does not raise the same constitutional arguments that Williams has advanced on this appeal. Indeed, although the same counsel represented Williams on certiorari and on the instant appeal, the petition makes no mention of this case. In light of our disposition of the instant case, we need not decide whether Williams might have addressed his present federal constitutional arguments to the Virginia Supreme Court on its review of the final order of the Commission.

by the Commission and the Commission's ultimate full hearing under § 65.1–99 of the Act. Williams in essence reads the phrase of Rule 13 providing that "benefits shall not be suspended" prior to meeting the requirements of the Rule as meaning that benefits may successfully be suspended once those requirements have been met. If this reading of Rule 13 is incorrect, the complexion of this case changes dramatically, because it is then within the power of a claimant to reinstate benefits simply by petitioning a state trial court to perform a ministerial duty. It may well be that this perfunctory enforcement power is so readily available that a claimant could render any suspension of benefits *de minimis*. If so, those in appellants' class may not be able to establish a constitutionally significant injury under any reading of the Due Process Clause of the Fourteenth Amendment.

Every indication in the record and in the state authorities is that Williams had at his disposal a state court enforcement right that he simply failed to utilize. See n. 4, *supra*. As the Commission declared in its motion to dismiss before the District Court:

> "Virginia's statutory framework does not authorize the *termination* of benefits as alleged by plaintiff, it permits only the initiation of a procedure by which benefits may ultimately be terminated. Should plaintiff be dissatisfied with the temporary cessation of benefits pending an administrative hearing, he is entitled by the provisions of § 65.1–100 to reduce his award to judgment in an appropriate court of record and compel the resumption of benefits. It should be noted that in such a case the court has no discretion and must enter judgment against the employer or his insurer." (Emphasis in original; citations omitted.)

One of the appellees makes the same point in its brief,[11] and Williams' counsel conceded at oral argument that, if read literally, § 65.1–100 of the Act permits no other result.[12]  Counsel attempted to overcome this concession by arguing that the Virginia courts have not interpreted Rule 13 recently and that they might today hold that the Rule overrides the language of § 65.1–100.[13]  This argument plainly has no merit, since the Commission is without power to promulgate a rule that would repeal a section of the Act.[14]  Moreover, it is obvious that the Commission had no such purpose.  Rule 13 was designed to protect employees, see *Manchester Bd. & Paper Co.* v. *Parker,* 201 Va. 328, 111 S. E. 2d 453 (1959), not to deprive them of rights existing under the Act.  It establishes barriers that an employer or insurer must surmount before it may obtain the § 65.1–99 hearing that is a prerequisite to extinguishing a claimant's right to enforce an award or agreement in state court.  The Rule is designed to serve as a screening device for eliminating obviously unmeritorious applications for hearings filed by insurers and employers.[15]  It is not an authorization for an

[11] See Brief of Appellee Aetna Casualty and Surety Co. 5: "Applicants usually cease paying compensation at the time they file the application based on a change of condition, but the actual award is changed only by order of the Commission following a full hearing or agreement of the parties.  Although the award speaks in terms of continuing 'during incapacity,' incapacity can be challenged only before the Commission.  Therefore, the employee can enforce payments even after the Commission finds 'probable cause' to believe a change has occurred and schedules a hearing just as he can enforce an award against a recalcitrant employer who suspends payments without probable cause."

[12] Tr. of Oral Arg. 53.

[13] *Id.,* at 52, 53, 55.

[14] See n. 8, *supra.*

[15] The Commission states that the purpose of Rule 13 is to require employers and insurers "to submit sufficient information to the

employer or insurer to suspend payments with assurance that a claimant may not have them reinstated under § 65.1–100 of the Act.

The District Court itself noted that Rule 13 probably does not permit ar employer or insurer to escape § 65.1–100 of the Act.[16] It reached appellants' federal constitutional claim only by assuming, *arguendo,* "that the Rule is authority for the employer or insurer to terminate payments . . . ." 347 F. Supp., at 75. Based on what has been brought to our attention and our review of state law, such an assumption in all likelihood would be inaccurate.[17] In any event, that court must resolve any

---

Commission of the ultimate merit of the suspension that the possibility of fraudulent, frivolous or arbitrary suspensions is eliminiated [*sic*] and the likelihood of suspension in non-fraudulent but otherwise non-meritorious cases is minimized." Motion to Affirm 3. An *amicus* brief indicates that in about one-third of all Rule 13 applications the Commission finds no probable cause and thus does not permit employers or insurers to have a § 65.1–99 hearing. Brief for American Insurance Association et al. 14.

[16] The court declared:

"Nowhere in the Rule does it authorize or direct the employer or insurer to cease payments before a full hearing. It merely provides the Commission will not hear the petition of the employer or insurer asserting any change in condition if payments under the award have not been made up to the date the application is deemed filed, with an admonition that benefits *shall not* be suspended until the supporting evidence submitted with the petition has been reviewed and it is determined probable cause exists to believe a change has occurred, and if a finding of probable cause is made, the application will then be deemed filed. Here again, it does not authorize or direct suspension of payments, but merely provides the insurer or employer may not have a hearing on an alleged change of condition unless and until the provisions of the Rule are complied with." 347 F. Supp., at 74–75 (emphasis in original).

[17] There is also a question in the record whether a probable cause determination by the Commission under Rule 13 is necessarily *ex parte* and whether a claimant is in fact denied notice of such a

doubts on the issue before reaching appellants' federal claim. If there is significant doubt about the status of state law, the court should consider abstention, as the

proceeding. The District Court noted this at the outset of its opinion:

"The determination of 'probable cause' is to be made from an examination of 'supporting evidence which constitutes a legal basis' for changing the existing award. Nowhere does the Rule say the determination may be made without notice to the employee and a chance to be heard. The mere fact that such an inference may exist—a determination without notice to the employee and an opportunity to be heard—does not render the language objectionable on its face. . . . The [April 1, 1972] amendment to the Rule is new and the evidence does not indicate what the Commission will require in the way of supporting evidence to constitute a legal basis for establishing probable cause to believe a change in condition has occurred." 347 F. Supp., at 75 (citation omitted).

Moreover, we were informed at oral argument that as a matter of practice insurance companies and the Commission regularly inform claimants that a probable cause determination is pending. Tr. of Oral Arg. 43–44. It was also asserted that the Commission would take into account submissions by a claimant when it makes a probable cause determination. *Id.*, at 44. An *amicus* brief indicates that:

"An employee may, under the present Rule 13, file a written statement or submit evidence opposing the probable cause determination. However, in fact this rarely occurs because the employee normally does not have access to the employer's evidence and because the Commission acts rapidly without waiting to receive any submission from the employee. (However, if an employee does send in information even after probable cause is found, the Commission will evaluate the information. If the information indicates that payment should not be suspended, the Commission informs the carrier and the carrier then continues payments to the claimant)." Brief for American Insurance Association et al. 13–14.

If a claimant receives notice of a Rule 13 application and if the Commission will receive and evaluate his counter-affidavits or medical evidence, the constitutional challenge to the Virginia system would arise in a different light even if no recourse to the state courts were available under § 65.1–100 of the Act. As it did with regard

state law question may well be dispositive. *E. g., Lake Carriers' Assn.* v. *MacMullan,* 406 U. S. 498 (1972). If, as appears to be the case, state law clearly provided Williams an adequate state court remedy he did not pursue, then the court will be presented with a wholly different issue from the one it decided. Assuming it is also established that the Commission's Rule 13 procedures are necessarily *ex parte,*[18] then the only question is whether the interruption, if any, of benefits between the time of suspension and the time a claimant obtains reinstatement of benefits by petitioning the state courts is of any controlling significance. If the court determines that a claimant as a general rule may obtain reinstatement of benefits without undue delay following a finding of probable cause by the Commission under Rule 13, then the court should dismiss the complaint.

We indicate no view on the question decided by the District Court—whether the suspension of benefits without notice and an adversary hearing denies due process of law, where the funds at issue are private, not public, where the State requires a finding of probable cause and other procedural safeguards short of a prior adversary hearing, and where a full hearing follows suspension of benefits by a period on the average of one month. The judgment is vacated, and the case is remanded for reconsideration in accordance with this opinion.

*It is so ordered.*

---

to the question of the impact of Rule 13 on a claimant's right to reinstate benefits by resort to the state trial courts, the District Court bypassed this question of state law. It "assum[ed] that the Rule does not provide for notice and a hearing to the employee prior to termination of the award . . . ." 347 F. Supp., at 75. The court should have resolved its doubts on this issue before addressing appellants' federal constitutional argument.

[18] See n. 17, *supra.*

MR. JUSTICE DOUGLAS, dissenting.

This case involves a class action brought on behalf of all persons who, as a result of sustaining employment-related injuries, are recipients of benefits under the Virginia Workmen's Compensation Act, Va. Code Ann. § 65.1–1 *et seq.* The action challenges the constitutionality under the Due Process Clause of the Fourteenth Amendment of that part of the Act allowing a termination of benefit payments by the employer or insurer as a result of an asserted change in condition prior to a full hearing on the alleged change before the Commission. The complaint prayed for an injunction to restrain enforcement of that part of the Act. A three-judge District Court was convened, 28 U. S. C. § 2281, and the challenged portions of the Act were found constitutional, one judge dissenting. 347 F. Supp. 71 (ED Va. 1972).

The Act provides a system allowing the employer and the employee to escape personal injury litigation for on-the-job injuries; it provides for the payment of compensation under fixed rules. Once the Industrial Commission approves an award of benefits, the Commission or any party in interest may move for review of the award "on the ground of a change in condition." Va. Code Ann. § 65.1–99. According to the Commission's Rule 13, all such applications by an employer or insurer to decrease or terminate benefits " 'require that an *ex parte* inquiry be held by the Commission to determine whether probable cause exists for a change in the award before any benefits may be temporarily suspended pending a full hearing.' " 347 F. Supp., at 79.

Suspension of benefits awarded by the Commission is thus permitted upon an *ex parte* determination that "probable cause" for termination exists. The parties here do not dispute that the full hearing conducted by the Commission before final termination, with notice

and opportunity for all parties to be heard, satisfies the requirements of due process. At issue is the *ex parte* suspension of benefits of a Commission's award prior to that final hearing. The Court does not reach the constitutionality of the suspension, because a claimant, whose benefits have been so suspended, may bring suit in a state court to have them reinstated, pursuant to Va. Code Ann. § 65.1–100.

I disagree that the opportunity for a claimant to counteract a termination of benefits payable under an award of the Commission by instituting a state court action is an answer to the constitutional challenge to the termination.* The issue here is the necessity of a hearing *before* termination of benefits. Any state remedy which places upon the worker the burden of going to court to redress a termination which has already occurred is simply not in point. It places the burden of affirmative action upon that segment of society least able to bear it at a time which could not be less opportune. As Judge Merhige said below in dissent: "Judges need not blind themselves to what they know as men. I cannot help but believe that the average workingman in Virginia, who has sustained an injury resulting in a substantial reduction of his weekly income, suffers a grave and immediate loss. . . . The very thought that the *ex parte* proceeding permitted by Rule 13 may result in a cessation of milk delivery, or electric power, or fuel to a working man and his family, shocks my conscience." 347 F. Supp., at 81.

---

* In *Sniadach* v. *Family Finance Corp.*, 395 U. S. 337 (1969), wages earned could not be seized under garnishment by a creditor without prior notice and opportunity to be heard. By the same token, in the present case entitlement to an award made by the Commission should not be taken *ex parte* but only after prior notice and opportunity to be heard if procedural due process is to control as it must by reason of the Fourteenth Amendment.

The opportunity for working-class men and women in that grave situation to enter state court and do battle with the corporate employers and insurers who have already terminated their benefits without a hearing is no meaningful solution to their problem.

Since I find the state remedy inapposite, I dissent from the remand to consider its impact.