COURT OF APPEALS OF VIRGINIA


Present: Judges Humphreys, Agee and Kelsey
Argued at Salem, Virginia


MONDELL H. WASHINGTON
                                              OPINION BY
v.    Record No. 1168-02-3         JUDGE ROBERT J. HUMPHREYS
                                          FEBRUARY 25, 2003
UNITED PARCEL SERVICE OF AMERICA AND
 LIBERTY MUTUAL FIRE INSURANCE COMPANY


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

           George L. Townsend (Bradford M. Young;
           Chandler, Franklin & O'Bryan, on briefs), for
           appellant.

           Patricia C. Arrighi (Jesse F. Narron;
           Taylor & Walker, P.C., on brief), for
           appellees.


     Mondell Washington appeals from a decision of the Virginia

Workers' Compensation Commission refusing to enforce the terms of

an open award, and denying Washington's request to assess a 20%

penalty against United Parcel Service of America and Liberty

Mutual Fire Insurance Company (UPS), pursuant to Code § 65.2-524,

for failing to pay Washington certain benefits under the open

award.  For the following reasons, we affirm the decision of the

commission.

                         I.  Background

     On appeal, we review the evidence, together with all

reasonable inferences that may be drawn, in the light most

favorable to UPS, the party prevailing before the commission. Great Eastern Resort Corp. v. Gordon, 31 Va. App. 608, 610, 525 S.E.2d 55, 56 (2000). So viewed, the evidence below established that, at the time of his initial injury, Washington had been employed with UPS for approximately six years as a "preloader." His duties in that capacity required him to load delivery trucks. During his subsequent employment with UPS, Washington incurred three separate injuries to his right knee.

## A. June 18, 1997 Injury

On June 18, 1997, Washington injured his right knee when "he stepped between the loading dock and a delivery truck," causing his knee to "twist." Washington reported the injury to his supervisor that day, and UPS filed its Employer's Accident Report on June 25, 1997.

Washington did not apply for benefits as a result of the injury until July 24, 2000. UPS accepted Washington's claim as compensable on August 23, 2000, and the parties filed a Memorandum of Agreement pertaining to the related benefits on May 7, 2001. However, the commission rejected the memorandum because it was not properly signed by UPS's insurance carrier.

## B. August 4, 1998 Injury

On August 4, 1998, Washington injured his right knee again when he "twisted" it after stepping down from a truck, onto an "uneven surface." Washington promptly reported the injury to his

-

supervisor, and UPS then filed an Employer's Accident Report with the commission.

Washington also applied to the commission for benefits for this injury on July 24, 2000. UPS accepted the injury as compensable on August 25, 2000, and the parties filed a Memorandum of Agreement on May 7, 2001. This memorandum was properly filed and on May 15, 2001, the commission awarded Washington temporary total disability benefits for the closed period of August 5, 1998 through November 8, 1998 (the time during which Washington was off of work due to treatment for his injury, which included arthroscopic surgery), as well as medical benefits pursuant to Code § 65.2-603.

## C.  September 15, 1999 Injury

Washington injured his right knee once again on September 15, 1999, as he was "walking down a steep driveway in [rain] and slipped," feeling his knee "pop." Washington and UPS again promptly reported the accident and, in March of 2000, entered into an agreement for payment of related benefits. Accordingly, the commission entered an award on May 16, 2000, granting Washington temporary total disability benefits beginning September 16, 1999, and continuing "during [his] incapacity," and medical benefits, pursuant to Code § 65.2-603, "for as long as necessary."

## D.  Treatment History

Washington returned to work after his second knee injury, and related arthroscopic surgery, on November 9, 1998.

-

After his third injury, on September 15, 1999, Washington returned to his treating physician, Dr. Andre Eglevsky, complaining of pain in his knee. Dr. Eglevsky treated Washington for several months thereafter and performed an additional arthroscopic surgery. He released Washington from work on several occasions during that time. However, on June 6, 2000, after treating Washington for several months and finding no objective cause of the knee pain Washington complained of, Dr. Eglevsky stated that he had "absolutely no idea" why Washington was continuing to suffer pain as he reported and released Washington to work, with no restrictions, as of June 8, 2000.

Washington returned to work on June 9, 2000. However, he subsequently sought treatment from Dr. Kurt Larson, expressing his desire to undergo an additional arthroscopic surgery, and cartilage harvesting. Dr. Larson removed Washington from work on March 28, 2001, until approximately four weeks following the diagnostic surgery. Washington underwent the procedure on June 15, 2001.

### E. Commission Proceedings

UPS stopped payment of benefits to Washington under the May 16, 2000 award for the September 1999 injury as of June 9, 2000, when Washington returned to work with a full release from Dr. Eglevsky. However, UPS never filed a request for termination of the award with the commission.

-

In April and May of 2001, Washington filed change of condition applications requesting additional benefits for each of the three separate injuries, seeking benefits, including temporary total disability benefits, beginning March 28, 2001 and continuing.

On May 14, 2001, Washington filed an additional application with the commission requesting that the commission assess a 20% penalty against UPS, pursuant to Code § 65.2-524, for its failure to pay him benefits under the May 16, 2000 award after June 9, 2000, when he returned to work.

The commission entered an award granting Washington's request for the penalty assessment on June 7, 2001. However, UPS did not respond, and the commission issued a show cause order. At Washington's request, the commission scheduled a hearing on September 4, 2001, to hear evidence concerning each of his change of condition applications, including the show cause.

As a result of that hearing, the deputy commissioner found that 1) Washington was barred from requesting any benefits for the June 18, 1997 injury, because he failed to file his initial application for benefits within the statutory limitation period provided in Code § 65.2-601; 2) Washington was barred from receiving benefits on a change of condition application for the August 4, 1998 injury, because he was last paid compensation for the injury on November 8, 1998 and thus failed to file an application for review within the twenty-four month period after

-

compensation was last paid, as required by Code § 65.2-708; 3)

Washington was further barred from receiving additional benefits

for the August 4, 1998 injury because it was causally unrelated to

the March 28, 2001 disability period, for which Washington sought

to receive additional benefits; 4) Washington was not entitled to

the requested 20% penalty because, "while [UPS was] woefully

remiss in not terminating the May 16, 2000 award," any disability

Washington suffered after he was released to return to work on

June 9, 2000, without restriction was causally unrelated to any of

his prior injuries; and 5) the May 16, 2000 award should be

terminated because Washington was given a full release to return

to work as of June 8, 2000.  Accordingly, the deputy commissioner

entered the appropriate orders and quashed the show cause order

issued by the commission.

Washington appealed the deputy commissioner's determinations

that he was not entitled to benefits for the period after March

28, 2001 and that he was not entitled to the 20% penalty.  After

reviewing the record, the full commission affirmed the deputy

commissioner's award finding that because Washington was given a

full release to return to work as of June 8, 2000, and because he

returned to his pre-injury work until March 28, 2001, he was not

entitled to benefits after June 8, 2000 and, thus, no penalty

should be assessed.  The commission further held that Washington

was not entitled to benefits for the period after March 28, 2001

-

because the condition for which he sought benefits was causally unrelated to his work-related injuries.

## II.  Analysis

On appeal, Washington contends only that the commission erred in refusing to grant him benefits under the open May 16, 2000 award and that the commission erred in refusing to assess the 20% penalty against UPS for failing to pay him benefits consistent with the award.

We first note that "[t]he commission's finding on [a] legal question is not conclusive and binding upon us, but is properly subject to judicial review."  Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 168, 543 S.E.2d 619, 621 (2001). Nevertheless, we give great weight to the commission's interpretations of the Act.  Peyton v. Williams, 206 Va. 595, 600, 145 S.E.2d 147, 151 (1965).

Washington correctly notes that "[a] decision of the [commission] granting or denying, or changing or refusing to change some benefit payable or allowable under the Workers' Compensation Act" is final, "leaving nothing to be done except to superintend ministerially the execution of the award."  Jewell Ridge Coal Corp. v. Henderson, 229 Va. 266, 269, 329 S.E.2d 48, 50 (1985).

Indeed, Code § 65.2-524 provides, in relevant part, that if any payment so awarded,

-

> is not paid within two weeks after it
> becomes due, there shall be added to such
> unpaid compensation an amount equal to
> twenty percent thereof, unless the
> Commission finds that any required payment
> has been made as promptly as practicable and
> (i) there is good cause outside the control
> of the employer for the delay or (ii) in the
> case of a self-insured employer, the
> employer has issued the required payment to
> the employee as a part of the next regular
> payroll after the payment becomes due. . . .

Further, commission Rule 1.4(C) requires an employer to pay compensation through the date of filing a change of condition application with the commission, unless "[t]he application alleges the employee returned to work, in which case payment shall be made to the date of return."  Nevertheless, UPS never filed a change of condition application with the commission alleging that Washington had returned to work and requesting termination of the May 16, 2000 award.  Instead, UPS unilaterally terminated its payment of benefits under the award after Washington returned to work without restrictions.

As Washington correctly argues, we have held that neither Code § 65.2-500, concerning the amount available to an employee for total incapacity, nor Code § 65.2-708, concerning both an employee's and employer's ability to file an application for review of an award based upon an employee's change of condition, "gives an employer the unilateral right to cease paying compensation benefits to a . . . disabled employee under an outstanding . . . award, when that employee returns to

-

work . . . and the employer does not file an application or an agreed statement of fact along with a supplemental memorandum of agreement."  Odin, Inc. v. Price, 23 Va. App. 66, 72, 474 S.E.2d 162, 165 (1996).[1]  In fact, we have specifically recognized the laudable purpose of commission Rule 1.4(C) as a method of policing the "'tendency of employers and insurers to terminate first and litigate later.'"  Specialty Auto Body v. Cook, 14 Va. App. 327, 330, 416 S.E.2d 233, 235 (1992) (quoting Dillard v. Industrial Comm'n, 416 U.S. 783, 789 (1974)).

However, we must consider this jurisprudence in context with the principle that "[w]hen a worker does not suffer a loss of wages, receipt of compensation benefits would unjustly enrich the worker and result in manifest injustice.  It is '"[n]either logical, reasonable, [n]or within the spirit of the Act"' to award benefits when a worker is not entitled to them."  Lam v. Kawneer Co., Inc., 38 Va. App. 515, 518, 566 S.E.2d 874, 875-76 (2002) (citations omitted).  Accordingly, we have held that:

> [w]hile we do not condone the employer's failure to file an application to terminate the award . . . [, t]he equitable power of the commission, as exemplified in the doctrine of imposition, includes the power to "'render decisions based on justice shown by the total circumstances even though no fraud, mistake or concealment has been

---

[1] We note that, unlike Washington's case, in Odin, the employer terminated benefits despite the fact that he had not been given a full release to return to work and was, therefore, still entitled to temporary partial disability benefits, as found by the commission.

shown.'" Odom v. Red Lobster #235, 20 Va. App. 228, 234, 456 S.E.2d 140, 143 (1995) (quoting Avon Prods. Inc. v. Ross, 14 Va. App. 1, 7, 415 S.E.2d 225, 228 (1992)). The purpose of the Act "'is to compensate injured workers for lost wages, not to enrich them unjustly.'" Collins [v. Dep't of Alcoholic Beverage Comm.], 21 Va. App. [671,] 678, 467 S.E.2d [279,] 282 (quoting Harris [v. Diamond Const. Co.], 184 Va. [711,] 717, 36 S.E.2d [573,] 576 [(1946),] [aff'd en banc, 22 Va. App. 625, 472 S.E.2d 287 (1996)].

Lam, 38 Va. App. at 519-20, 566 S.E.2d at 876.

Here, as in Lam, Washington returned to work on June 9, 2000, with no physical restrictions. He was not released from full-duty work again, by a physician, until March 28, 2001, when Dr. Larson released him from work for the third arthroscopic surgery, which the commission found was causally unrelated to the injury upon which the May 16, 2000 award was based. No evidence in the record demonstrates that Washington made less than his pre-injury wage during that time, nor that any of his physicians retracted his full release to return to his pre-injury work for any reason related to the injury upon which the award was based. Furthermore, no evidence shows that UPS intentionally failed to file the appropriate paperwork requesting termination of the award, or that UPS possessed any ill intent in failing to do so. Indeed, UPS presented testimony during the hearing before the deputy commissioner stating that it had mailed Washington the "termination of wage loss, the Agreed Statement of Fact" forms,

-

after Washington returned to work in June of 2000, but they "never got them back."

Therefore, as the commission found that Washington was no longer entitled to benefits under the award after June 9, 2000, we find no error in the commission's determination that no benefits or penalty should be awarded.

Affirmed.

-