COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Clements and Haley
Argued at Chesapeake, Virginia


ADVANCED FINISHING SYSTEMS, INC. AND
   AMERICAN INTERSTATE INSURANCE COMPANY
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0910-07-1                      JUDGE JAMES W. HALEY, JR.
                                                        FEBRUARY 12, 2008
LISA BROWN-SNYDER


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Steven T. Billy (Tenley Carroll Seli; Stout, Billy & Seli, P.C., on
            briefs), for appellants.

            Byron A. Adams for appellee.


        Advanced Finishing Systems, Inc. and American Interstate Insurance Company

(collectively "employer") appeal an order of the Workers' Compensation Commission

("commission") rejecting employer's application for a hearing based upon a change in condition

and to suspend benefits previously awarded to Lisa Brown-Snyder ("employee").  Employer

maintains the commission erred in concluding that the medical evidence filed with employer's

application failed to establish probable cause it was meritorious.  We agree with employer and

reverse the decision of the commission.

                                          FACTS

        Employee suffered an injury to her back on October 9, 2003 while lifting a heavy box at

work.  The commission approved the parties' agreement to pay benefits from October 17, 2003

and continuing.  While she was receiving compensation, employee underwent back surgery.  She

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

also complained about pain in her knees and in her left leg, especially after she fell down in the shower on April 7, 2005. Employer filed an application for hearing on October 31, 2006. This application sought an order from the commission to terminate employee's disability benefits and hold an evidentiary hearing. Employer declared its intention to present evidence at the hearing proving that employee was now capable of returning to work. Employer supported its hearing application with several medical documents.

The employer's application included a questionnaire submitted by employer's attorney to Dr. Jeffrey Moore, the orthopaedic surgeon who treated employee's back pain since her accident. Dr. Moore examined employee on more than twenty-four occasions between the time of her accident and the filing of employer's application. He also performed three operations on employee, two in 2004 and another in 2006. Attached to the questionnaire submitted to Dr. Moore was a description of employee's pre-injury job duties. It asked Dr. Moore to review that description and a Functional Capacity Evaluation ("FCE") from Tidewater Physical Therapy before answering a series of questions. The first question reads: "[b]ased on your review of the enclosed materials and your treatment of Ms. Brown-Snyder, do you believe that she is currently capable of returning to pre-injury employment with regards to her back injury?" Dr. Moore answered "yes." Dr. Moore gave October 12, 2006 as the date on which he believed employee could return to work. Dr. Moore also answered yes to the third and last question: "[I]f you do not believe that Ms. Brown-Snyder is capable of returning to full duty employment, do you believe she is capable of sedentary work within the restrictions outlined in the Functional Capacity Evaluation?"

Employer also submitted FCE the written by physical therapist Wayne McMasters. Mr. McMasters based his evaluation on the employee's performance of several physical tests on

October 11, 2006. The FCE indicates that employee did not complete all of the scheduled tests because she fell down. Mr. McMasters did not proceed with additional tests out of a concern for her safety. Based on the tests that employee did complete, Mr. McMasters concluded that employee, "demonstrates abilities in the sedentary physical demand classification." The FCE also mentions that employee, "presents with positive nonorganic signs and inconsistencies in sacral flexion, straight leg raise testing, regional weakness, cogwheeling, and overreactive pain behaviors."

Employer also submitted two other medical documents with its hearing application. One of these was a letter to employer's attorney from Dr. Stephen Blasdell of Portsmouth Orthopaedic Associates. Dr. Blasdell based his report on a review of employee's medical records since 1993. Dr. Blasdell wrote that he believed that employee's left lower extremity symptoms were not caused by her October 9, 2003 accident. Dr. Blasdell also wrote:

> Ms. Brown-Snyder has demonstrated, on numerous occasions, nonphysiologic findings including nondermatomal distribution of pain and numbness and hypersensitivity even to light touch about the left knee. These nonphysiological findings raise the question of symptom magnification. Ms. Brown-Snyder's multiple surgeries and invasive tests along with her confusing array of severe symptoms and nonphysiologic findings all raise the very likely possibility that she is suffering from Munchausen syndrome.

The final piece of medical evidence submitted with employer's application was an independent medical examination addendum written by Dr. Howard Stern. Dr. Stern based his report on an extensive review of employee's medical records from before and after her workplace accident. In addition to reviewing the records, Dr. Stern also examined employee in person on August 22, 2005. Dr. Stern opined that employee's lower leg pain was not causally related to her October 9, 2003 workplace accident. He also wrote, "[i]n my medical opinion, the

claimant's left lower extremity complaints appear out of proportion to objective findings and do not require any current or future treatment, on the basis of objective findings."

Employee objected to employer's application for a hearing. Employee maintained that the job description employer's attorney had sent to Dr. Moore with the questionnaire was inaccurate. According to employee, her pre-injury job duties included the unloading of freight, while the job description seen by Dr. Moore did not include unloading freight. Employee also submitted two medical documents in opposition to employer's application. One of these was a progress note from Dr. Mark Newman, dated October 17, 2006. Dr. Newman indicated in his notes that he was aware that an FCE had been performed but that he did not yet have the results. His notes indicate that he had seen employee on September 18, 2006 and that she had complained of increased lower back pain. Employee also submitted progress notes of Dr. Dharmesh Shah, dated August 29, 2006. Dr. Shah's notes indicate that employee visited his office on August 21, 2006 with complaints of back pain. Dr. Shah's notes indicated that he prescribed medication for chronic back pain.[1]

Employer's attorney responded to employee's objection. This response announced the employer's intention to introduce testimony regarding employee's pre-injury job description, "including specific evidence that loading freight was never part of her job duties."

---

[1] Employee's attorney also filed a questionnaire answered by Dr. Newman stating that employee was not able to return to work. Employee submitted this via a letter dated November 22, 2006. We do not consider this document in our review of the commission's decision for two reasons. First, employer filed the hearing application on October 31, 2006, and the commission's Rule 1.5(c) gives the employee only fifteen days to present evidence in opposition to the application. Second, the decisions of both the claims examiner and of the full commission denying employer's hearing application never mention this document, despite its obvious relevance to the change in condition question. It therefore seems reasonable to assume that neither of them considered it because it was not timely filed pursuant to Rule 1.5(c).

Senior Claims Examiner Linda deLamorton rejected employer's application. Ms. deLamorton's letter of November 16, 2006 decided that Dr. Moore's response to employer's attorney's questionnaire was too ambiguous to establish probable cause for a hearing because his answers indicated both that employee could return to her pre-injury employment with regard to her back injury and that she was capable of sedentary work within the restrictions mentioned in the FCE. Ms. deLamorton also wrote that Dr. Moore's opinion was not based on a contemporaneous examination of employee. Ms. deLamorton's letter did not address the reports of Drs. Blasdell and Stern.

Employer sought review of Ms. deLamorton's decision by the full commission, and the commission issued an opinion affirming the denial of employer's hearing application. The commission's decision noted that Dr. Moore's opinion that employee could return to work was not based on a contemporaneous examination, that Dr. Moore's questionnaire responses were inconsistent and ambiguous, that employee had fallen during the FCE, and that there was no evidence indicating that Dr. Feltham, the doctor caring for employee's foot and ankle problems, believed that employee could return to work. Employer appealed the denial of its hearing application to this Court.

ANALYSIS

Code § 65.2-708 authorizes the commission to hold hearings to review compensation previously awarded on the application of any party in interest. The commission has also promulgated Rule 1.4, establishing particular requirements for an employer's application for a hearing based on a change in condition. "Each change in condition application filed by an employer under § 65.2-708 of the Code of Virginia shall: 1. Be in writing; 2. Be under oath; 3. State the grounds for relief; and 4. State the date for which compensation was last paid."

Commission Rule 1.4(B). The parties do not dispute that employer's application in this case complied with these requirements.

The commission's former Rule 13 governed the commission's prehearing procedures before the promulgation of Rules 1.4 and 1.5 in 1994. Former Rule 13 expressly required employer to establish that probable cause exists to believe a change in condition has occurred. While probable cause is not mentioned in the text of Rule 1.4, the decisions of the commission and of this Court interpreting Rule 1.4 have held that an employer must establish probable cause that a change in condition has occurred before the commission will place the case on the hearing docket. Circuit City Stores, Inc. v. Scotece, 28 Va. App. 383, 386, 504 S.E.2d 881, 883 (1998).

> An employer's application for hearing will be deemed not "technically acceptable" and will be rejected unless the employer's designated supporting documentation is sufficient to support a finding of probable cause to believe the employer's grounds for relief are meritorious. The commission has defined the standard of "probable cause" as "[a] reasonable ground for belief in the existence of facts warranting the proceeding complained of."

Id. "[Former Rule 13] is designed to serve as a screening device for eliminating obviously unmeritorious applications for hearings filed by insurers and employers." Dillard v. Industrial Comm'n of Virginia, 416 U.S. 783, 795 (1974).

We turn now to the reasons offered by the commission for denying employer's application. The commission states that Dr. Moore's opinions were not based on a contemporaneous examination of employee. Yet Dr. Moore still had considerable information upon which to base his opinions. He had been treating appellant's back injury for more than three years. He had performed three surgeries. He had examined her on August 30, and he also reviewed the FCE of October 11, only a few weeks before employer filed its hearing application. We acknowledge that the interval of time since Dr. Moore last examined employee might

properly be considered by a deputy commissioner in determining the weight to be given to his testimony during the course of an evidentiary hearing. But that time interval, given Dr. Moore's familiarity with this patient and his review of the very recent FCE, was not a sufficient reason for dispensing with a hearing altogether.

The commission also stated that Dr. Moore's answers to employer's attorney's questionnaire were inconsistent. The supposed contradiction was between Dr. Moore's affirmative answers to the questions: "1. Based upon your review of the enclosed materials and your treatment of Ms. Brown-Snyder, do you believe she is currently capable of returning to pre-injury employment with regard to her back injury?" and "3. If you do not believe that Ms. Brown-Snyder is capable of returning to full duty employment, do you believe that she is capable of sedentary work within the restrictions outlined in the Functional Capacity Evaluation?" The "enclosed materials" to which question 1 refers include the FCE and *employer's* version of employee's pre-injury job description. This version of employee's job duties did not include unloading freight. Therefore it is by no means obvious that Dr. Moore's affirmative answers to questions 1 and 3 were inconsistent because, based on the job description he saw, Dr. Moore could easily have concluded that employee's "full duty" was a form of sedentary work already within the restrictions described in the FCE.

To the extent that Dr. Moore's answers were ambiguous, we do not believe that the ambiguity suggests that a hearing in this case was inappropriate. Employer's application sought the termination of employee's temporary total disability benefits. In addition to the possibility already suggested above, Dr. Moore's answers to the questionnaire might mean that employee was capable of full duty work or that employee could return to work with certain restricted duties. Any of these possibilities, if true, would mean that continuation of temporary total

disability benefits was inappropriate.  The ambiguity mentioned in the commission's opinion was therefore not a sufficient reason for denying employer's hearing application.

The commission also mentions that employee fell during the FCE as a reason for denying that employer had established probable cause.  Yet Mr. McMasters was aware of this fall when he wrote that employee could return to do sedentary work.  And Dr. Moore had read the FCE when he answered employer's questionnaire.  Given that these trained professionals had decided the fall would not prevent employee from working, it is difficult to understand why the commission would use the fall as a reason to deny employer a hearing on this issue.  Ultimately, the extent to which employee's continued disability might affect her capacity to return to work may depend upon the accuracy of employer's job description.  Employer's attorney stated employee was not required to do heavy lifting as an office manager.  Employee's lawyer denied this.  We cannot, on appeal, tell which of them was right, and neither could the commission when they denied employer's application.  This is exactly the sort of disputed factual question that evidentiary hearings are meant to resolve.  "The doctor's report itself provides reasonable grounds for a belief that facts exist warranting the proceeding.  The accuracy of the job description the doctor saw is an issue for the hearing, not a matter for a claims examiner to evaluate."  Gallahan v. Free-Lance Star, 41 Va. App. 694, 703-704, 589 S.E.2d 12, 17 (2003).

The last reason the commission offers for its decision is that Dr. Feltham never recommended that employee could return to work.  The commission describes Dr. Feltham as employee's treating physician.  And it is true that the testimony of a treating physician is usually accorded considerable weight.  But nothing in the text of Rule 1.4 or Code § 65.2-708 requires that the evidence supporting a hearing application must come from any specific doctor.  Dr. Moore was certainly very familiar with employee's back problems.  Because the employer

- 8 -

was asking the commission to review an award of benefits relating to employee's back injury, it may not have occurred to employer to include documents from employee's foot and ankle doctor, especially in light of the statements of Dr. Moore, Dr. Blasdell, and Dr. Stern that employee's foot and ankle problems were not related to her workplace accident. Of course, Dr. Feltham may still have something important to say about employee's ability to work. Either or both parties may still wish to ask questions of Dr. Feltham at the evidentiary hearing, and his answers to their questions may be highly relevant to whether a change in condition has really occurred. But we see no legal reason, and the commission's opinion does not cite any authority providing a legal reason, why the absence of a statement from Dr. Feltham was necessarily inconsistent with a finding of probable cause.

### CONCLUSION

All of the arguments offered by the commission's opinion and by employee's brief may affect the weight of the evidence or the outcome of the evidentiary hearing. Pursuant to the commission's Rule 2.2, employee will also have the opportunity to present evidence and examine witnesses at such a hearing. We express no opinion as to whether employee is actually capable of returning to work. We do not suggest that the evidentiary hearing must result in the termination of employee's disability benefits. We hold only that, as a matter of law, employer was entitled to such a hearing based on the medical evidence submitted in support of employer's application. Based on this evidence, it is impossible for us to say that employer's application was "obviously unmeritorious." Dillard, 416 U.S. at 795. Nor can we agree that employer's application was not "technically acceptable." Circuit City, 28 Va. App. at 386, 504 S.E.2d at 883. We find as a matter of law that employer's evidence established probable cause that a

- 9 -

change in condition occurred.  We therefore reverse the commission's decision and remand with instructions to place this case on the hearing docket.

Reversed and remanded.