COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Elder and Kelsey
Argued at Salem, Virginia


JUDY BOYD

                                                                    OPINION BY
v.        Record No. 1910-03-3                      JUDGE LARRY G. ELDER
                                                                    MAY 18, 2004

PEOPLE, INC. AND NORTH AMERICAN
 SPECIALTY INSURANCE COMPANY


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                Paul L. Phipps (Lee & Phipps, P.C., on briefs), for appellant.

                Ramesh Murthy (Lisa Frisina Clement; PennStuart, on brief), for
                appellees.


        Judy Boyd (claimant) appeals from a decision of the Workers' Compensation

Commission holding that the application of her employer, People, Inc., and its insurer, North

American Specialty Insurance Company (hereinafter collectively employer), to terminate

benefits being paid pursuant to an outstanding award was properly filed.  On appeal, she

contends the application for termination was void *ab initio* because the check paying benefits

through the date of filing of the application, although bearing the same issue date as the

application, was postmarked one day later than the date on the application.  We hold the

commission's determination that employer's application did not violate Commission Rule 1.4

was not error.  Thus, we affirm.

I.

BACKGROUND

Claimant sustained a compensable injury by accident to her lower back on July 30, 2001, while working for employer. Employer accepted the injury as compensable, and the parties executed an agreement to pay temporary total disability benefits. Based on that agreement, the commission entered an award on December 14, 2001.

On July 18, 2002, employer filed an application requesting termination of the outstanding award based on claimant's release to return to her pre-injury employment. The application was dated July 18, 2002, and mailed via certified mail on that date. The application indicated that benefits had been paid to claimant through July 18, 2002. A check paying benefits through July 18, 2002, was issued on that same date. The envelope in which the check was mailed was postmarked July 19, 2002.

Commission staff determined the application was based on probable cause. As a result, the application was docketed on August 7, 2002, and referred to the hearing docket. Claimant did not object to the determination of probable cause or the referral of the application to the hearing docket.

At the hearing before the deputy commissioner on October 30, 2002, claimant moved to dismiss employer's application as void *ab initio* under Commission Rule 1.4, contending the termination application misrepresented that the disability benefits payments were current at the time it filed its application. The deputy commissioner concluded the application was not void *ab initio*. The deputy also found claimant was capable of returning to work and terminated the award effective July 18, 2002.

On appeal, the commission unanimously affirmed the deputy's decision that employer's termination application was not defective. It rejected employer's argument that claimant waived

her right to raise the procedural objection by not asserting it when probable cause was found and the matter was referred to the hearing docket. The commission also concluded "claimant has made no showing that she was not paid compensation for the period ending July 18, 2002, the date the application was filed. The check covering that period was issued on the day of the application's filing, although postmarked the next day." On those facts, it concluded the application "was not defective." Finally, the commission concluded the evidence established claimant was no longer disabled due to the effects of her work injury and was able to return to pre-injury employment.

Claimant noted an appeal to this Court only on the issue of the timeliness of employer's payment of benefits.

II.

ANALYSIS

Claimant contends that, under Rule 1.4, the commission erroneously docketed and considered employer's application for termination of benefits. She argues the application was void because employer filed the application by sending it via certified mail on July 18, 2002, but did not mail the related benefits check, which was issued that date and paid benefits through that date, until July 19, 2002.[1] When a challenge is made to the commission's construction of its

---

[1] Employer contends in a footnote that claimant waived her right to contest the timeliness of the payment accompanying the application because she failed to object or submit evidence within 15 days after the commission's acceptance of the application. We disagree. Although Rule 1.5 gives the party opposing the application fifteen days to present evidence in opposition before the matter is referred for a hearing on the record or evidentiary hearing, the rule does not *require* that any objections must be made or evidence submitted prior to that time upon penalty of waiver. Cf. Specialty Auto Body v. Cook, 14 Va. App. 327, 332, 416 S.E.2d 233, 236 (1992) (holding that Cook had neither waived nor been estopped from asserting as a defense to the employer's application the fact that it had not paid benefits through the date of the application because "[n]othing in Rule 13 requires that the defect in the application be assailed prior to the evidentiary hearing").
    We need not decide whether a non-compliant application would be void *ab initio* or merely voidable. Compare Cook, 14 Va. App. at 332, 416 S.E.2d at 236 (affirming

rules, "our review is limited to a determination of whether the commission's interpretation of its own rule was reasonable." <u>Classic Floors, Inc. v. Guy</u>, 9 Va. App. 90, 93, 383 S.E.2d 761, 763 (1989). We will not set aside the commission's interpretation of its rules unless that interpretation is arbitrary and capricious. <u>Specialty Auto Body v. Cook</u>, 14 Va. App. 327, 330, 416 S.E.2d 233, 235 (1992). Upon our review of the "undisputed facts" in the record, we hold the commission's determination that employer's application did not violate Rule 1.4 was not error.

Commission Rule 1.4 requires that, absent certain exceptions not applicable here, an employer filing an application for a hearing based on a change in condition must pay "[c]ompensation . . . through the date the application was filed." Rule 1.4(C). That application must "[s]tate the date for which compensation was last paid." <u>Id.</u> The commission held in <u>Cook</u>, that an employer's change-in-condition application is facially void if the application represents that benefits were paid through a date prior to the date of filing of the application, and it concluded that Rule 1.4 requires dismissal of the application under these circumstances. 14 Va. App. at 329, 416 S.E.2d at 234 (decided under former Rule 13, predecessor to Rule 1.4, which contained substantially similar requirements). We upheld that result, reasoning as follows:

> The Commission promulgated [Rule 1.4] "to police [the] tendency of employers and insurers to terminate first and litigate later." The Rule provides a reasonable mechanism to protect employees from possible abuse in the filing practices of employers. Thus, we cannot say that a strict interpretation of [Rule 1.4's] provisions is misplaced or unreasonable.

---

commission's conclusion that application was void *ab initio*) <u>with</u> <u>Nelson v. Warden</u>, 262 Va. 276, 284-85, 552 S.E.2d 73, 77-78 (2001) (noting distinction between subject matter jurisdiction and authority to exercise that jurisdiction).

Id. at 330-31, 416 S.E.2d at 235 (quoting Dillard v. Comm'n, 416 U.S. 783, 789, 94 S. Ct. 2028, 2032, 40 L. Ed. 2d 540 (1974)) (citation omitted).

The commission has also applied Rule 1.4 in circumstances in which the application is facially valid but additional evidence proves the required compensation payments were not made "through the date the application was filed," Rule 1.4, "either *before* or *with* the filing of [the] [a]pplication," Rule v. Southside Reg. Med. Ctr., 74 O.W.C. 40, 1995 WL 1063835, *1 (1995) (emphases added). In Mullins v. T & J Trucking, 73 O.W.C. 56, 1994 WL 1039789, *1 (1994), for example, the employer represented that benefits for a two-week period preceding the date of filing of the application were paid on the date the application was filed. However, the record indicated the employer did not mail the benefit payment at issue until three days after it filed its application. Id. Citing our decision in Cook, the commission emphasized its position that "compensation must be paid to the employee through the filing date *at the time of filing*." [2] Id. (emphasis added).

Prior to the instant case, however, neither the commission nor any Virginia appellate court had expressly considered what "paid" and payment mean in the context of Rule 1.4(C)'s express requirement that compensation shall be paid *through* the date the application was filed and the commission's position that such payment shall be made *before* or *with* the employer's filing of the application. We now hold that the commission's ruling here, which considers benefits timely paid pursuant to Rule 1.4 where the payment check and the application bear the same date and the payment is postmarked the following day, is not unreasonable in light of the purpose of the Rule "to police [the] tendency of employers and insurers to terminate first and

---

[2] Rule 1.4 expressly requires only that compensation be paid "*through* the date the application was filed" and does not require that such payments be made *before* or *at* the time of filing of the application. (Emphasis added). Nor does our decision in Cook compel such an interpretation.

- 5 -

litigate later." Where the application and benefits payment are issued on the same date and mailing of the payment is only briefly postponed--here, by only one day--a decision that benefits have, in fact, been paid simultaneously with the filing of the application is not arbitrary and capricious.

Nor is such a result in conflict with the commission's decisions in Mullins and Rule. In Mullins, the employer filed its application on May 6, 1994, and it did not mail the compensation check paying benefits through that date until three days later. 1994 WL 1039789, at *1. The commission found this three-day delay in mailing was insufficient to satisfy Rule 1.4(C), and it made no mention of the date on which the check was issued. Id. In Rule, in which the employer alleged a refusal of selective employment on December 5, 1994, the commission noted the benefits check was issued the same date employer's application was filed, December 9, 1994, but was not mailed "until three days after the application was filed and eight days after the date through which payment was required," December 4, 1994. 1995 WL 1063835, at *2.

The commission's decision in claimant's case is nothing but a further refinement of its conclusion that Rule 1.4(C) requires an employer to "pay compensation either before or with the filing of an Application for Hearing." Id. at *1. A finding that a check issued the same day the application is filed and postmarked the next day is timely is not arbitrary and capricious in light of Rule, in which the check was postmarked three days later and eight days after the date through which it was due. Further, given that the commission's opinion is subject to a reasonable interpretation that does not conflict with Rule or Mullins, the commission had no duty to expressly distinguish these decisions in its opinion in this case.[3]

---

[3] Although the commission cited in support Williams v. Williams, VWC No. 191-75-20, 1999 WL 1006880 (Va. Workers' Comp. Comm'n Oct. 21, 1999), a prior unpublished decision lacking legal significance in this context, the commission nevertheless focused on the dispositive facts under Rule--that "[t]he check covering [the period ending July 18, 2002, the date the application was filed] was issued on the day of the application's filing, although postmarked the

Claimant contends our holding in Audobon Tree Service v. Childress, 2 Va. App. 35, 341 S.E.2d 211 (1986), compels the conclusion that compensation benefits are "paid" pursuant to Rule 1.4 only when the payment is mailed directly to the claimant. Thus, she contends, the benefits owed her were paid not when the check was issued on July 18, 2002, but rather when the check was mailed to her on July 19, 2002, as indicated by the postmark on the accompanying envelope. We disagree.

In Audobon, we considered when benefits were deemed "paid" pursuant to former Code § 65.1-75.1, now Code § 65.2-524, which allowed the assessment of a penalty for "'any payment . . . not paid within two weeks after it becomes due.'" 2 Va. App. at 36 n.2, 341 S.E.2d at 212 n.2. The employer timely mailed the benefits to the claimant's lawyer rather than the claimant, and the claimant did not actually receive them until after the two-week period had expired. Id. at 41, 341 S.E.2d at 215. The commission held that "payment [was] 'paid under Code § 65.1-75.1 only after it [had] been received by the claimant.'" Id. at 38, 341 S.E.2d at 213. We disagreed, holding that when benefits were "paid" under Code § 65.1-75.1 was determined by when they were mailed rather than when they were received. Id. at 40-41, 341 S.E.2d at 214-15. However, we affirmed the commission's assessment of a penalty because we concluded the benefits had to be mailed "*directly* to the claimant" rather than his lawyer in order for them to be considered "paid." Id. at 41, 341 S.E.2d at 215.

Our decision in Audobon was dependent upon the legislature's intent in enacting Code § 65.1-75.1. 2 Va. App. at 40, 341 S.E.2d at 214-15. Further, in each instance in the opinion in

---

next day." Thus, contrary to the position taken by the dissent, the commission, for the right reason rather than the wrong one, exercised its discretion to reach what it believed was the right result, even if the authority it cited in support of that "right reason" lacked legal significance in this context. Cf. Lash v. County of Henrico, 14 Va. App. 926, 929, 421 S.E.2d 851, 853 (1992) (*en banc*) (holding that, as long as litigant preserves *issue* in trial court, Rule 5A:18 does not prevent appellate court "from relying on . . . *authority* that was not presented to the trial court or referred to in [the parties'] briefs" (emphasis added)).

which we stated our conclusion regarding the meaning of "paid," we clearly indicated that our interpretation of the word "paid" related to its usage in that particular code section. Id. at 38-41, 341 S.E.2d at 213-15.

In this case, by contrast, we are called to pass upon the commission's interpretation of its own Rule 1.4, not a statute enacted by the legislature. In light of the purpose of the rule "to police [the] tendency of employers and insurers to terminate first and litigate later," we hold the commission's interpretation of the rule is not error. As set out above, where the application and benefits payment are issued on the same date and mailing of the payment is only briefly postponed, a decision that benefits have, in fact, been paid simultaneously with the filing of the application is not arbitrary and capricious.

### III.

For these reasons, we hold the commission's determination that employer's application did not violate Rule 1.4 was not arbitrary and capricious. Thus, we affirm.

Affirmed.

Kelsey, J., concurring.

In my opinion, the commission's flexible interpretation of Rule 1.4(C) in this case cannot be persuasively reconciled with its earlier, inflexible interpretation announced in Rule v. Southside Reg. Med. Ctr., 74 O.W.C. 40, 42, 1995 WL 1063835, at \*1 (1995) (holding that the "employer must pay compensation either *before or with* the filing" and that payment "*after* filing is not permitted"), and Mullins v. T & J Trucking, 73 O.W.C. 56, 57, 1994 WL 1039789, at \*1 (1994) (holding that "compensation must be paid to the employee through the filing date *at the time of filing*").

That is not to say that the commission cannot "change its mind" about its previous interpretations — it can, of course, "so long as its new interpretation is reasonable." United States v. Deaton, 332 F.3d 698, 711 (4th Cir. 2003) (citing Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 742 (1996)). Even so, the new interpretation cannot be a "sudden and unexplained change" or one that fails to take into account "legitimate reliance on prior interpretation." Smiley, 517 U.S. at 742 (citing Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co, 463 U.S. 29, 46-57 (1983)). Cf. Piney Mt. Coal Co. v. Mays, 176 F.3d 753, 766-67 (4th Cir. 1999) (giving deference, despite an agency's reversal of its prior interpretation, because the agency "took commendable care to explain this change cogently" and why it chose not to stay "on the wrong path merely because it is well worn").

In this case, the commission did not distinguish or, for that matter, even mention Mullins or Rule. Nor did the commission apply the *ratio decidendi* of either. It is one thing for the commission to change its mind, but quite another to be double-minded. The former may or may not be arbitrary, depending on the circumstances. The latter, however, almost certainly is. That said, I do not agree with my dissenting colleague's suggestion that we remand the case back to the commissioners to tell us which of their two competing interpretations of Rule 1.4(C) should

apply to this case.[4]  They have already told us that — in an unanimous opinion.  The proper

judicial response to a situation like this is to jettison altogether any interpretative deference and

do what appellate courts ordinarily do:  decide questions of law *de novo*.

If we did that here, without any preset in favor of either line of precedent, I would hold

that <u>Mullins</u> and <u>Rule</u> applied Rule 1.4(C) in an artificial and formalistic manner.  The duty to

pay "through" the date of the application does not, linguistically or logically, require that it be

paid *simultaneously* with the application.  By reading this interlinear requirement into the text of

Rule 1.4(C), the commission promulgated a *de facto* rule amendment outside the constraints of

the rulemaking process.  It only compounds the error for the commission to say, albeit with our

encouragement, that violations of this interpretative gloss renders the employer's application

"void *ab initio*."  <u>Mullins</u>, 73 O.W.C. at 57, 1994 WL 1039789, at \*1 (citing <u>Specialty Auto</u>

<u>Body v. Cook</u>, 14 Va. App. 327, 332, 416 S.E.2d 233, 236 (1992)).

In sum, the employer in this case paid "through" the date of the application.  By mailing

the check the next day, the employer violated neither the literal requirements of Rule 1.4(C) nor

its underlying policy rationale.  I thus concur with the decision to affirm the commission's

decision in this case.

---

[4] The implied power of appellate remand extends to situations where it is necessary to correct some "defect in the record" or to permit "further evidence to be taken or additional findings to be made upon essential points."  <u>Hoyle v. Va. Employment Comm'n</u>, 24 Va. App. 533, 537-38, 484 S.E.2d 132, 134 (1997) (quoting <u>Jones v. Willard</u>, 224 Va. 602, 606-07, 299 S.E.2d 504, 507-08 (1983)).  Neither situation exists here.

Benton, J., dissenting.

Ordinarily, I would concur in affirming the commission's decision because the record established (i) that the employer's application for a hearing seeking termination of the award indicated benefits had been paid through the date of filing the application and (ii) that, on the day the employer mailed its application for a hearing, the employer had drawn a check payable to the employee for benefits due through that day. The record also established that the check was mailed to the employee the day after the employer mailed the application to the commission. Thus, the literal requirements of Rule 1.4(C) -- that "compensation shall be paid through the date the application was filed" -- appear to have been met. Cf. Specialty Auto Body v. Cook, 14 Va. App. 327, 329, 416 S.E.2d 233, 235 (1992) (holding that the requirements of Rule 13, the predecessor to Rule 1.4(C), were not met where the employer suspended payments to the employee on August 26, 1990, two days before the employer filed its application for a hearing on August 28, 1990). Of course, this presupposes that the commission would have interpreted Rule 1.4(C) to be satisfied by a prompt mailing or delivery of the payment to the employee, a finding the commission did not explicitly make in this case.

I.

I dissent and write separately for two reasons. First, it is important to note that the critical issue under Rule 1.4(C) is not the date written on the check but, rather, whether the check is drawn in an amount sufficient to pay the employee benefits due through the date of filing the application.

Second, the commission's decision in this case is contrary to its earlier decisions in Mullins v. T & J Trucking, 73 O.W.C. 56 (1994), and Rule v. Southside Reg'l Med. Ctr., 74 O.W.C. 40 (1995). Those decisions interpret Rule 1.4(C) in a different way, but not in an unreasonable way. In Mullins, the employer filed its application for hearing on May 6, 1994 and

mailed, three days later, a check to the employee paying benefits through May 6, 1994. 73 O.W.C. at 56-57. The commission ruled the application did not satisfy Rule 1.4(C) because "compensation must be paid to the employee through the filing date *at the time of filing*." Id. at 57 (emphasis added). Thus, the employer's delay in mailing the benefits check was determinative.

In Rule, the employer filed an application for hearing on December 9, 1994, see 74 O.W.C. at 41, and drew a check that same day paying benefits through December 4, 1994, the date the employee refused selective employment. Id. at 42. Because the check was mailed December 12, 1994, the commission ruled "that payment was not *mailed* to the [employee] until three days after the application was filed and eight days after the date through which payment was required . . . [and, therefore,] the employer's application failed to comply with Rule 1.4(C)." Id. (emphasis added). Again, the delay in mailing the benefits check caused a failure to comply with the rule.

I believe the rule of decision that the commission established in Mullins and Rule is contrary to the decision in this case, where the check was mailed a day after the date the employer filed the application. Applying the logic of Mullins, the application was invalid because compensation was not paid "at the time of filing." 73 O.W.C. at 57. Applying the logic of Rule, the application was invalid because the "payment was not mailed to the [employee] until . . . after the application was filed." 74 O.W.C. at 42.[5]

---

[5] The commission long ago ruled that an application that fails to comport with the requirements of its Rules is "void *ab initio*." Byrd v. C.E. Jones Logging Co., 55 O.I.C. 63, 66 (1973) (ruling that an application filed pursuant to Rule 13, the predecessor to Rule 1.4 was "not filed in accordance with the law and Rules of the . . . Commission . . . [and], therefore, void *ab initio*"). Whether such an application is of no effect or invalid or void is undoubtedly a decision that the administrative agency may reasonably determine in interpreting its rules. See Sargent Electric Co. v. Woodall, 228 Va. 419, 323 S.E.2d 102 (1984); Cook, 14 Va. App. 327, 416 S.E.2d 233.

- 12 -

When the commission decided that the application in this case satisfied Rule 1.4(C), the commission did not cite or discuss either Mullins or Rule. Instead, the commission relied upon its unpublished decision in Williams v. Williams, 99 VWC UNP 1917520 (1999) (October 21, 1999). Discussing whether the application for hearing, which the employer filed on December 14, 1998, complied with Rule 1.4(C), the commission ruled as follows in Williams:

> The record indicates that the last compensation check was dated December 14, 1998, and postmarked December 15, 1998. The explanation of payment, submitted by the [employee], indicated that the check was for temporary total disability benefits from November 3 through December 17, 1998. There is no evidence that he was not paid compensation through December 16, 1998. The fact that the check was dated December 14, 1998, does not mean that it covered payments only until that date. Accordingly, the Deputy Commissioner properly found that benefits had been paid through December 16, 1998, and accepted the employer's Application for Hearing.

Although the commission's opinion in Williams did not disclose the specific arguments advanced in that case, the commission's ruling suggests that the disputed issue was whether the check dated December 14, 1998 could represent payment for benefits through December 16, 1998. In short, in Williams, the commission reached the unremarkable and obvious conclusion that the amount of the check, not the date of the check, determined whether it paid benefits through the date of filing the application. In reaching this conclusion, the commission had no occasion in Williams to discuss Mullins or Rule and, therefore, did not.

II.

A cardinal principle of administrative law is that an agency's interpretation of its own rules will not be overturned unless arbitrary and capricious or unreasonable. Nicholson v. Clinchfield Coal Corp., 154 Va. 401, 404-05, 153 S.E. 805, 806-07 (1930); Virginia Real Estate Bd. v. Clay, 9 Va. App. 152, 159, 384 S.E.2d 622, 626 (1989). We have applied this principle to

the commission's interpretation of its rules. <u>Gallahan v. Free Lance Star Publishing</u>, 41 Va. App. 694, 700, 589 S.E.2d 12, 15 (2003).

> "The commission has statutory authority to 'make rules and regulations for carrying out the provisions of [the Act].'" <u>Ratliff v. Rocco Farm Foods</u>, 16 Va. App. 234, 237, 429 S.E.2d 39, 41 (1993) (citing Code § 65.2-201(A)). "Because the [commission] promulgates these rules and has the obligation and right to enforce them, we would prefer that it have the first opportunity to construe its own rules." <u>Brushy Ridge Coal Co. v. Blevins</u>, 6 Va. App. 73, 78 n.2, 367 S.E.2d 204, 206 n.2 (1988). We accord great deference to the interpretation given by the commission to its rules. "Consequently, our review is limited to a determination whether the commission's interpretation of its own rule was reasonable." <u>Classic Floors, Inc. v. Guy</u>, 9 Va. App. 90, 93, 383 S.E.2d 761, 763 (1989).

<u>Arellano v. Pam E. K's Donuts Shop</u>, 26 Va. App. 478, 482-83, 495 S.E.2d 519, 521 (1998). Likewise, we have held that "'[t]he commission's interpretation will be accorded great deference and will not be set aside unless arbitrary or capricious.'" <u>Estate of Kiser v. Pulaski Furniture Co.</u>, 41 Va. App. 293, 299, 584 S.E.2d 464, 467 (2003) (citation omitted).

In this case, the commission's newfound interpretation of Rule 1.4(C) has the character of being arbitrary and capricious. Relying upon an unpublished opinion without any discussion of the contrary interpretation in its published opinions, the commission has adopted an interpretation of Rule 1.4(C) that is inconsistent with its earlier pronouncements. Moreover, the commission's opinion fails to explain this deviation from its earlier interpretation; therefore, it demonstrates a lack of thoroughness in its consideration of the issues, evinces little validity in its reasoning, and lacks persuasiveness. Citing <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947), the Supreme Court held, in a decision involving another administrative agency, that "[e]ven where the Commission has reached the right result for the wrong reason, its decision, unlike that of a trial court, will not be permitted to stand." <u>First Virginia Bank v. Commonwealth</u>, 213 Va. 349, 351, 193 S.E.2d 4, 5-6 (1972).

[A] simple but fundamental rule of administrative law . . . is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which [the legislature] has set aside exclusively for the administrative agency.

. . . [A]n important corollary of the foregoing rule . . . [is:] If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive. In other words, "We must know what a decision means before the duty becomes ours to say whether it is right or wrong."

Chenery Corp., 332 U.S. at 196-97 (citation omitted).

In view of the deficiencies in the commission's opinion and the commission's contradictory interpretations of Rule 1.4(C) as evidenced by Mullins, Rule, and the decision in this case, I would reverse this decision and remand to the commission for a determination which of the two conflicting interpretations shall be the commission's rule of decision in interpreting Rule 1.4(C). A remand is often appropriate when the record of an administrative agency contains a defect that falls within the expertise of the agency.

"It is familiar appellate practice to remand causes for further proceedings without deciding the merits, where justice demands that course in order that some defect in the record may be supplied. Such a remand may be made to permit further evidence to be taken or additional findings to be made upon essential points." And "an appellate court is not without recourse in the event it finds itself unable to exercise informed judicial review because of an inadequate administrative record. In such a situation, an appellate court may always remand a case to the agency for further consideration."

- 15 -

Jones v. Willard, 224 Va. 602, 607, 299 S.E.2d 504, 507-08 (1983) (citations omitted).  This is such a case.

I, therefore, dissent.