COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Haley and Alston
Argued at Alexandria, Virginia


UNITED PARCEL SERVICE, INC. AND
  LIBERTY INSURANCE CORPORATION
                                                              OPINION BY
v.        Record No. 2831-08-4                    JUDGE JAMES W. HALEY, JR.
                                                              JULY 21, 2009
JOHN A. ILG


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Patricia C. Arrighi (PennStuart, on brief), for appellants.

            Craig A. Brown (Ashcraft & Gerel, on brief), for appellee.


        United Parcel Service, Inc. and Liberty Insurance Corporation (collectively "employer")

appeal an order of the Workers' Compensation Commission ("commission") rejecting

employer's application for a hearing on the question of whether to suspend benefits previously

awarded to John A. Ilg ("employee"), pursuant to the parties' agreement to pay benefits to

compensate him for a work-related injury to his right knee.  Employer's hearing application

included a doctor's report that employee's knee injury no longer prevented employee from doing

certain restricted work.  The commission denied employer's application because the same doctor

opined that a medical condition affecting employee's right hand prevented him from working in

any capacity.  But, at the time the commission rejected employer's hearing application, the

commission had not held a hearing on whether the hand condition had been caused by the

work-related accident.  Nor had the commission accepted any agreement to pay benefits with

respect to the hand condition.  We agree with employer that the commission erred in rejecting

the hearing application under these circumstances. The commission's decision is reversed, and this case is remanded for further proceedings.

FACTS

While working as a delivery truck driver, employee fell from a truck on February 12, 2007 and suffered injuries. On April 26 of the same year, he filed a claim for benefits form with the commission. On that form is a blank space next to the words "Nature of the injury." On that space employee apparently wrote, "injury to right hand and right knee." The commission issued an order, dated May 9, requiring that employer complete attached forms and return them to the commission. Employer's insurance carrier responded to this order with a letter. According to the letter "[employee's] claim was accepted as compensable but the following issues were unresolved. We have agreed to pay benefits from 2/13/07 and ongoing. We have paid TPD [temporary partial disability] for 2/13/07, TTD [temporary total disability] 2/14-2/15, TPD 2/16/07 and TTD 2/17/07 ongoing." On June 5, the commission sent a letter to both parties "acknowledging receipt of the carrier's position that temporary total and temporary partial wage loss benefits have been paid voluntarily." The letter also announced that employee's application for hearing would be placed on "administrative hold for the executed Agreement to Pay Benefits form."

On June 29, 2007, the agreement to pay benefits form, *signed by both parties*, was filed with the commission. Next to the form's pre-printed language "Nature of injury or illness, including body parts affected" is only "Pain in Right Knee." The form does not refer to the hand injury mentioned on employee's original claim for benefits form. The commission approved this agreement to pay benefits by an award order dated July 12. The award order provides that, "Lifetime Medical benefits are hereby awarded for reasonable, necessary and authorized medical treatment causally related to the 2/12/2007 injury."

- 2 -

After the filing of the award order, employee hired a lawyer, who sent a letter to the commission, dated November 6, 2007. This letter announced that employee had retained counsel and requested copies of the employer's accident report as well as any medical records or signed statements of the employee in the commission's file. The letter also stated that, as a result of his February 12 work-related fall from the truck, employee had suffered injuries to his right hand, right knee, and to his head. The letter reads, in part: "Please treat this letter as Claimant's *Application for Hearing*, by counsel, based upon the injuries described above. Claimant seeks all benefits to which he may be entitled under the Virginia Workers' Compensation Act." The commission's response to the letter, dated November 9, states that the requested documents are enclosed, but it does not mention employee's hearing request at all. Nor does it contain any acknowledgement that employee's hearing request alleges injuries to body parts (right hand and head) that were not included in the earlier agreement to pay benefits. Instead, the commission noted: "No further action will be taken on this file until requested by the parties. If we can be of any further assistance to you, please so advise."

On February 25, 2008, Dr. Randall Peyton, who treated employee's knee injury, signed two forms, each labeled "fitness for duty evaluation." Each form listed employee's name. One had a diagnosis of "knee pain" and indicated that employee's fitness for duty was "restricted." Dr. Peyton checked a box next to the words "Medium work – lifting 50lbs maximum with frequent lifting and/or carrying objects weighing up to 25lbs." Under "comments" Dr. Peyton wrote "unable to perform stair climbing [longer than] 4.5 minutes." The second form, also dated February 25, has a diagnosis of "R knee/R hand." On this form, Dr. Peyton circled the words "unable to work in any capacity." The inconsistency in the forms is explained in follow-up notes also written by Dr. Peyton. According to the notes, "[w]e have gone through his exam and gone through the work-hardening notes and stated that the hand apparently is worsening from lifting.

He is supposed to have this operated on. We talked about a work release in relation only to the knee."

After receiving the form that declared employee fit for restricted duty in relation to his knee injury, employer apparently sought employee's participation in vocational rehabilitation. Employee's counsel responded by letter on May 29, 2008. This letter referred to the form that stated that employee was unable to work in any capacity. It also reads "[s]ince Mr. Ilg has met his responsibility to participate in an initial vocational assessment, please be advised that he will not now violate his doctor's orders that he remain off work." On June 10, 2008, employer filed an application for a hearing. The application included a copy of the fitness for duty evaluation releasing employee for restricted work. Employee wrote a response to the application, including the form signed by Dr. Peyton stating that employee was unable to work in any capacity because of his hand condition.

Senior Claims Examiner Linda deLamorton issued a letter opinion for the commission, dated July 7, 2008, denying employer's application for a hearing. The opinion reads, in part:

> The original agreement does not (likely due to poor preparation) include the right hand as part of the injuries in this case. Interestingly, the treatment notes from the onset included the right hand. In any event, the employer/carrier did not raise causation on the face of the employer's application, and this discrepancy is not part of my consideration. It is apparent the employee is totally disabled from both the right knee and right hand, and unable to participate in vocational rehabilitation. At best, the reports from Dr. Peyton are ambiguous.
>
> Under these circumstances, probable cause does not exist to grant a hearing to the employer/carrier.

Employer argued that the full commission should reverse Ms. deLamorton's ruling because the hand condition that kept employee from working was "not related to the compensable injury." The full commission issued an opinion on October 30, 2008, affirming the earlier ruling. The commission found that:

- 4 -

On July 7, 2008, the Senior Claims Examiner determined that the defendants had not alleged causation in their application and that the claimant was totally disabled from both the right knee and the right hand and therefore was unable to participate in vocational rehabilitation.

\* \* \* \* \* \* \*

Here, the documentation does not show that the claimant refused to cooperate with vocational rehabilitation efforts. The medical records indicate that the claimant suffered Dupuytren's contractions, a middle finger MCP joint sprain and carpal tunnel syndrome. *The defendants did not present sufficient evidence that these conditions were pre-existing*, such that they did not have to take them into account in conducting vocational placement, *or, if they arose after the accident, that they were unrelated to it*. See American Furniture Co. v. Doane, 230 Va. 39, 334 S.E.2d 548 (1985). Hence, the documentation did not warrant the docketing of the application.

(Emphasis added).

This appeal followed.

ANALYSIS

The commission has the power to make and enforce rules to carry out the purposes of the Workers' Compensation Act provided that such rules are not inconsistent with the Act. Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 129 n.2, 510 S.E.2d 255, 260 n.2 (1999) (*en banc*). "When a challenge is made to the commission's construction of its rules, the appellate court's review is limited to a determination of whether the commission's interpretation was reasonable." Id.

Commission Rule 1.4 sets out requirements for the employer's application for a hearing to review compensation previously awarded. See also Code § 65.2-708 (authorizing hearings to review compensation previously awarded on change in condition). This Court has previously held that the employer must establish probable cause that a change in condition has occurred before the employer's hearing application will be accepted. Circuit City Stores, Inc. v. Scotece,

28 Va. App. 383, 386, 504 S.E.2d 881, 883 (1998). "The commission has defined the standard of 'probable cause' as '[a] reasonable ground for belief in the existence of facts warranting the proceeding complained of.'" Id. at 387, 504 S.E.2d at 883 (quoting Black's Law Dictionary 1081 (5th ed. 1979)). "[The predecessor to current Rule 1.4] is designed to serve as a screening device for eliminating obviously unmeritorious applications for hearings filed by insurers and employers." Dillard v. Industrial Comm'n of Virginia, 416 U.S. 783, 795 (1974).

In this case, the employer's application alleged employee failed to cooperate with vocational rehabilitation. The statutory basis for a suspension of benefits under such circumstances is found in Code § 65.2-603(B), which provides that:

> The unjustified refusal of the employee to accept . . . vocational rehabilitation services when provided by the employer shall bar the employee from further compensation until such refusal ceases and no compensation shall at any time be paid for the period of suspension unless, in the opinion of the Commission, the circumstances justified the refusal.

The commission's opinion argues that the medical evidence did not show probable cause that employee made an "unjustified refusal" to accept vocational rehabilitation in light of Dr. Peyton's undisputed opinion that employee's hand condition prevented him from working in any capacity. The commission further argues that employer's application did not introduce any evidence that employee's hand condition was not a result of employee's work-related accident. Relying on American Furniture Co. v. Doane, 230 Va. 39, 334 S.E.2d 548 (1985), employer responds that the commission erred in assigning to employer the burden of showing probable cause that employee's hand condition was the result of the work-related accident because the parties' original agreement mentioned only the knee injury.

In Doane, the employee suffered a back injury at work and was awarded compensation. Id. at 41, 334 S.E.2d at 549. Almost two years later, the doctor who performed surgery on the employee's back recommended that she return to "lighter work." Id. at 41, 334 S.E.2d at 550.

- 6 -

Employer offered her a new job, a description of which was approved by the doctor, but employee could not perform the light work because "pain, numbness, weakness, and loss of grip in her right hand" had developed since her back surgery. Id. The employer applied for a suspension of benefits "on the ground of unjustified refusal of selective employment." Id. After holding a hearing on the issue, a deputy commissioner suspended benefits because the evidence did not show a causal connection between the employee's hand impairment and the compensable back injury. Id. at 42, 334 S.E.2d at 550. The full commission reversed the deputy commissioner's decision, construing former Code § 65.1-63 (now Code § 65.2-510)[1] to mean that "selective employment must be within the employee's capacity at the time such employment is offered and that refusal based on an unrelated physical condition is not unjustified." Id. Our Supreme Court reversed the full commission:

> In our view, employment "suitable to [the employee's] capacity" means employment within the employee's residual capacity resulting from the industrial accident. The Act is based upon the premise that an employer is liable for the condition of an employee resulting from an industrial accident. But an employer is not liable for conditions not causally related to the employee's work.

Id. "An employer, therefore, is absolved of liability for compensation if the employee refuses selective employment because of a physical condition unrelated to the original industrial accident and arising since the accident." Id. at 43, 334 S.E.2d at 550.

We hold that this principle applies with equal force to cases involving a refusal to cooperate with vocational rehabilitation pursuant to Code § 65.2-603. When an employee cannot cooperate with vocational rehabilitation because of a medical condition not causally related to

---

[1] Though this case concerns an alleged refusal to cooperate with vocational rehabilitation as described in Code § 65.2-603 rather than a refusal of selective employment under former Code § 65.1-63 (currently Code § 65.2-510) as in Doane, the text of each statute provides that benefits be suspended during the period of such refusal unless such refusal was "justified." Former Code § 65.1-63 also included similar language at the time of the decision in Doane. See Doane, 230 Va. at 41 n.1, 334 S.E.2d at 549 n.1.

the work-related accidental injury for which benefits were originally awarded, the employee's refusal to cooperate is "unjustified" for the purposes of Code § 65.2-603, and the employer is absolved of liability for compensation for the duration of the refusal.

In this case, the record includes medical evidence providing probable cause that, with respect to his right knee injury, employee was capable of performing certain restricted work duties. Thus, employer's application to suspend benefits should have been granted unless employee's hand condition, which prevented his cooperation with vocational rehabilitation, was the subject of an enforceable award finding that the hand condition was the result of the work-related accident.

We, therefore, turn to the question: did the senior claims examiner's finding that the parties' original agreement to pay benefits failed to mention the hand injury "likely due to poor preparation" constitute an enforceable award of benefits with respect to the hand injury? Having reviewed the statutory provisions governing the award of workers' compensation benefits and our cases interpreting them, we conclude that it did not.

The senior claims examiner made her finding with respect to the hand injury in the course of addressing employer's application for a hearing pursuant to Commission Rule 1.4. According to the text of Rule 1.4, its requirements apply to "[e]ach change in condition application filed by an employer under § 65.2-708 of the Code of Virginia . . . ." But we have previously held that Code § 65.2-708 applies only to the review of claims where there has already been an award of benefits; the statute does not create a procedure for granting new awards. See Williams v. Virginia Elec. & Power Co., 18 Va. App. 569, 575, 445 S.E.2d 693, 697 (1994) ("This case arises pursuant to Code § 65.2-708, not Code § 65.2-704, as is asserted in claimant's brief. The Supreme Court has held that 'after the Commission has made its award and it has become final the procedure for review of disputes which may arise in connection with the award must be

- 8 -

under [Code § 65.2-708].'" (quoting Manchester Board & Paper Co. v. Parker, 201 Va. 328, 330, 111 S.E.2d 453, 455 (1959))). Because the commission has issued no award ordering compensation for employee's hand injury, the commission erred in finding that employer had the burden of raising the issue of causation in a hearing application pursuant to Code § 65.2-708.

The statutory procedures for enforcing the obligation to pay benefits to an injured employee under the Workers' Compensation Act support this conclusion. An agreement between the parties in regard to compensation or in compromise of a claim for compensation becomes enforceable if the commission approves the agreement. See Code § 65.2-701(A) ("If approved, the agreement shall be binding, and an award of compensation entered upon such agreement shall be for all purposes enforceable as provided by Code § 65.2-710."). See also Strong v. Old Dominion Power Co., 35 Va. App. 119, 127, 543 S.E.2d 598, 602 (2001) ("Moreover, without commission approval, a memorandum of agreement is null and void."). If the parties do not reach agreement, either may seek an award order from the commission by applying for a hearing. See Code §§ 65.2-702, -704(A). If not reviewed in due time upon a petition for rehearing, or review by the full commission, see Code § 65.2-705(A), the award or ruling deciding the disputed issues raised at the hearing becomes "conclusive and binding as to all questions of fact." Code § 65.2-706(A). In short, *whether or not* the parties agree on the terms of compensation, the text of the Workers' Compensation Act provides no procedure for obtaining an enforceable right to benefits without requesting an award from the commission.

There are two judicially created exceptions to the requirement that enforceable compensation awards must be obtained in accordance with the statutory procedures described above; but the record in this case does not support their application. The first of these exceptions is the doctrine of *de facto* awards. See National Linen Service v. McGuinn, 5 Va. App. 265, 362 S.E.2d 187 (1987) (*en banc*). In McGuinn, the employer voluntarily paid compensation to

employee for thirteen months, failed to contest that employee's injury was compensable, and failed to file the memorandum of agreement required by former Code § 65.1-93 (now Code § 65.2-701). Id. at 272-73, 362 S.E.2d at 191. This Court applied estoppel principles, holding that employee's reasonable reliance on employer's actions created an enforceable *de facto* award of benefits. Id.

It is true that, in this case, employer did not expressly dispute employee's original claim for benefits alleging "injury to right hand and right knee."[2] However, the record is unclear about the existence of a fact even more important to the existence of reasonable reliance: the payment of compensation for employee's hand injury. The weekly sum paid to employee pursuant to the agreement to compensate him for the total incapacity caused by his knee injury – 66 and two thirds percent of employee's pre-injury average weekly wage – would have been the same whether the employer was paying benefits for the hand condition, the knee injury, or both. See Code § 65.2-500(A).

Even without clear evidence of weekly payments, a *de facto* award might still be appropriate if employer consistently paid for medical care for employee's hand. The senior claims examiner's opinion states, correctly, that treatment notes in the record describe the progress of therapy for the hand. However, Dr. Evans, who treated employee's hand, noted on January 31, 2008 that: "[employee] has just elected to bypass the workmen's compensation system and have the surgery done under his private insurance and let his attorney sort things out once his hand recovers." As early as February 19, 2007, only one week after the accident,

---

[2] Employer's argument, i.e., that the agreement to pay benefits form signed by the parties and accepting only the knee injury as compensable operated as a denial of employee's earlier claim for compensation with respect to his hand injury, suggests that employer may have violated Commission Rule 4.1, which requires that: "If the claim is denied the employer *shall* notify the employee and the Commission promptly in writing." However, the procedural posture of this case restricts the scope of our review to whether the commission erred in denying employer's hearing application.

Dr. Kahn's notes indicate that employee: "[t]old Dr. Kahn about hand but was advised that it was separate injury and Dr. Kahn could not treat as part of the accident." Moreover, our prior published cases approving *de facto* awards each affirmed the commission's finding that a *de facto* award existed. See Henrico (County of) Pub. Util. v. Taylor, 34 Va. App. 233, 236, 540 S.E.2d 501, 503 (2001); Ryan's Family Steak Houses, Inc. v. Gowan, 32 Va. App. 459, 462, 528 S.E.2d 720, 721-22 (2000); McGuinn, 5 Va. App. at 272-73, 362 S.E.2d at 191. In this case, the commission based its decision, not on a finding of a *de facto* award, but on the erroneous assumption that the employer had the burden of showing that the hand injury had not been caused by the accident. While there may be a future case in which it is appropriate to find a *de facto* award as part of a "right result, wrong reason" analysis, we are reluctant to do so for the first time in a case where the record is unclear on the question of payment, which is very important to the related question of reasonable reliance.

The other exception is the commission's equitable power "to do full and complete justice in every case." Harris v. Diamond Construction Co., 184 Va. 711, 720, 36 S.E.2d 573, 577 (1946). This power allows the commission to set aside an award in the event of "fraud, mistake or imposition." Id. Yet there is no evidence in the record as to why employee's hand injury was omitted from the agreement to pay benefits form. Thus, it would be speculative to find that the reason was fraud or mistake. The related doctrine of imposition "focuses on a party's or the commission's 'use of superior knowledge [of, or] experience with[,] the . . . Act or use of economic leverage which results in an unjust deprivation' of benefits under the Act or an unjust application of the Act's provisions." Overhead Door Co. v. Lewis, 29 Va. App. 52, 60, 509 S.E.2d 535, 538-39 (1999) (quoting Butler v. City of Virginia Beach, 22 Va. App. 601, 605, 471 S.E.2d 830, 832 (1996)).

> In every case in which this Court or the Virginia Supreme Court
> has applied the doctrine of imposition, however, the commission

- 11 -

> either (1) could have exercised jurisdiction under the Act to render the requested result but did not formally obtain it due to the failure of a party to perform some act in a timely fashion or (2) actually exercised its jurisdiction under the Act to enter an award but later learned that the award was erroneous due to some misinformation.

Id. at 60, 509 S.E.2d at 539. The record similarly fails to show that the award accepting the parties' agreement to pay benefits was erroneous due to misinformation; nor is there evidence that a failure to perform some act in a timely fashion has deprived the commission of jurisdiction. Finally, the medical evidence in the record does not clearly indicate that the denial of benefits for employee's hand problem has resulted in "an unjust deprivation under the Act." For example, Dr. Evans opined that employee's Dupuytren's disease was exacerbated by the work-related accident, but according to Dr. Innis, "[h]is Dupuytren's problem is unrelated to the work accident." Moreover, his carpal tunnel syndrome is classified as an "ordinary disease of life" by Code § 65.2-401, which requires clear and convincing evidence, rather than a mere probability, that the disease arose in the course of the employment. Without a hearing or agreement on this question, we cannot say that the commission could have exercised its equitable powers to alter the agreement that the parties actually made.

In sum, the senior claims examiner made an unwarranted assumption that employee's right hand injury was *causally related* to the industrial accident. No award or agreement supported that conclusion. Moreover, that issue was never raised, or addressed, by the parties for her consideration. The commission compounded this error by placing on the employer, in contradiction to Doane, the burden of presenting medical evidence in their application showing the hand injury was "pre-existing" or was "unrelated to" the industrial accident.

## CONCLUSION

We find as a matter of law that employer's evidence established probable cause that a change in condition occurred with respect to the compensable injury acknowledged in the

parties' agreement to pay benefits.  We, therefore, reverse the commission's decision and remand with instructions to place this case on the hearing docket.

Reversed and remanded.