COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Huff and Senior Judge Coleman
Argued at Salem, Virginia


WAL-MART AND INSURANCE COMPANY
 OF THE STATE OF PENNSYLVANIA
                                                          OPINION BY
v.        Record No. 2085-11-3             JUDGE ROSSIE D. ALSTON, JR.
                                                          APRIL 24, 2012
ASHLEY L. POORMAN


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Monica Taylor Monday (E. Scott Austin; Gentry Locke Rakes &
          Moore, on briefs), for appellants.

          Karel Brown Ryan (Ryan Law Firm, on brief), for appellee.


          Wal-Mart ("employer") appeals the Workers' Compensation Commission's (the

"commission") decision to deny Wal-Mart's application for hearing alleging that Ashley

Poorman ("claimant") unjustifiably refused selective employment. Employer assigns two errors

to the commission's decision. Employer contends first that the commission erred in finding that

employer had the burden of raising causation in its hearing application and in finding that the

issue of causation was not properly before it. Additionally, employer argues that the commission

erroneously and impermissibly shifted the burden of proof on the causation issue from claimant

to employer and erroneously required employer to prove that medical conditions that were not

the subject of an award were not caused by the accident. Because we find that the commission

did err in the first aspect that employer identifies, we reverse and remand for proceedings

consistent with this opinion.

# I. BACKGROUND

On October 7, 2007, claimant sustained a left ankle sprain after she became tangled in some shopping carts at work. As a result, she developed reflex sympathetic dystrophy ("RSD"), also referred to as complex regional pain syndrome. Claimant was twenty-two years old at the time of the injury. She treated first with Dr. Phillip Peterson, a family doctor, who referred her to Dr. Walid Azzo, an orthopedist. Dr. Azzo referred her to the University of Virginia Medical Center ("UVA"). Claimant then began treating with the pain management department at UVA, seeing multiple specialists, including Dr. Kevin Vorenkamp, an anesthesiologist. In January 2008, employer accepted the RSD injury as compensable pursuant to an agreement to pay benefits, and the commission entered an award a month later approving the agreement.

In October 2008, Dr. Peterson saw claimant for follow up on her RSD and noted that she was having seizure problems. Dr. Peterson referred her to a neurologist for the seizure disorder. Two months later, Dr. Peterson saw claimant again and noted that she reported new pain in her left wrist. In November 2009, Dr. Peterson saw claimant and noted that she was suffering from RSD, anxiety with some depression, and chronic dyspepsia. He also stated, "Extremities are left to the [follow up] of her specialists."

Also during this time, claimant saw Dr. Vorenkamp for sympathetic nerve block treatment for the RSD. On October 8, 2010, Dr. Vorenkamp signed employer's "Return to Work Activity Prescription" stating that claimant could return to work with the following restrictions: maximum lifting at 20 lbs., alternate sitting/standing, no overhead reaching, no above the shoulder work, no ladder work, and "[l]imit to 4 hours daily, max 5 days/week, rec [sic] off work during flares and for 2 weeks after procedure."

On October 18, 2010, employer sent claimant a document entitled "Bona Fide Job Offer" which noted that it had received the aforementioned release and statement of restrictions from Dr. Vorenkamp. Employer's offer to claimant included the following terms:

Work either in the fitting room or as a People Greeter;

Working from 8:00pm-midnight, five days per week;

Temporary Alternative Duty Position would be for 90 days;

Contact personnel manager by midnight on October 22, 2010 to accept the offer.

On October 21, 2010, claimant's counsel sent a letter to employer's counsel stating that the offer was not valid because Dr. Vorenkamp, as an anesthesiologist, was not qualified to give an opinion about claimant's ability to return to work. Additionally, claimant asserted that the offer was not valid because her "treating physician and all other treating consults have opined that she is totally disabled from employment as a result of this accident and injury."

On December 3, 2010, employer filed an application for termination/suspension of claimant's benefits alleging that she had unjustifiably refused selective employment on October 22, 2010. Employer attached three documents in support of its application, the "Return To Work Activity Prescription" signed by Dr. Vorenkamp, the "Bona Fide Job Offer," and an affidavit by employer's personnel manager. After evaluation, the commission found probable cause for the application and referred it to the hearing docket. In response, claimant filed an objection to employer's application, contending that Dr. Vorenkamp was not qualified to return her to work because he is an anesthesiologist.

After these filings but before an evidentiary hearing, claimant saw Dr. Peterson again. His office note indicated that UVA's anesthesia group had released claimant to return to work, but she was still suffering from "at least daily seizure-like episodes and uncontrolled anxiety for which she is seeing a psychiatrist at Southern Highlands."

On April 18, 2011, the deputy commissioner held a hearing. At the hearing, claimant agreed that she received an offer of selective employment and that she did not accept it. She defended claiming that her refusal was justified, repeating her prior assertion that Dr. Vorenkamp, who released her to light-duty work, was not qualified to do so because he is an anesthesiologist. Claimant further alleged that she was totally disabled based upon the opinion of other physicians including Dr. Azzo and Dr. Peterson. When asked directly why she did not accept employer's offer for other jobs, claimant stated: "Well, because I knew that I wouldn't be able to. I wouldn't be able to as far as . . . like the way this whole RSD has affected me between my foot pain and my ankle and my leg to being sick all the time, to my stress spells." Claimant then acknowledged that she had also provided this response to Dr. Vorenkamp before he signed the document returning her to work with restrictions.

Following claimant's testimony, the deputy commissioner *sua sponte* raised the issue of whether employer's application was properly before him because it did not allege causation. The deputy commissioner informed employer's counsel that employer had the burden of disproving the causal relationship of any condition claimant may have had at the time of the hearing.

On May 5, 2011, the deputy commissioner issued a decision rejecting employer's application. In his decision, the deputy commissioner explicitly concluded that claimant had health issues unrelated to the accident in question. Additionally, the deputy commissioner found that employer offered claimant selective employment within the restrictions given by Dr. Vorenkamp but she did not accept it. The deputy commissioner credited Dr. Vorenkamp's opinion on claimant's functional capacity based on her work-related injury because he was claimant's treating pain management specialist. Moreover, the deputy commissioner concluded that Dr. Azzo's opinion was not sufficient to override Dr. Vorenkamp's opinion because Dr. Azzo advised the commission in January 2011 that he was no longer claimant's treating

- 4 -

physician. Despite these conclusions, the deputy commissioner found that employer's application failed because employer's application did not raise the issue of causation as to claimant's seizures and anxiety issues, which Dr. Peterson maintained made claimant incapable of working.

Employer timely applied for review before the commission, and a divided commission affirmed the deputy commissioner's opinion. The majority held that the issue of causation was not properly before the commission because employer did not raise the issue of causation in its hearing application. The dissenting commissioner found the instant matter indistinguishable from, and controlled by, UPS, Inc. v. Ilg, 54 Va. App. 366, 679 S.E.2d 545 (2009). The dissenting commissioner suggested that pursuant to Ilg the employer was not required to raise or prove causation as to claimant's other medical conditions that were not the subject of a current award. Accordingly, the dissenting commissioner would have found that claimant's refusal of selective employment was unjustified.

## II. ANALYSIS

Whether the commission erred in finding that employer had the burden of raising causation in its hearing application and in finding that the issue of causation was not properly before it are questions of law. Accordingly, we review them *de novo*. See Peacock v. Browning Ferris, Inc., 38 Va. App. 241, 248, 563 S.E.2d 368, 372 (2002).

The Workers' Compensation Act dictates specific procedures and considerations that differ depending on whether a claimant has already received an award or is in the process of obtaining one. Code §§ 65.2-700 through -704 govern the process by which a claimant may obtain an award, while Code §§ 65.2-705 through -715 govern actions parties may take subsequent to the establishment of an award. See Ilg, 54 Va. App. at 375-77, 679 S.E.2d at 549-50. Once the commission makes an award and it has become final, the parties must seek

- 5 -

review of any disputes *related to that award* under Code § 65.2-708. Williams v. Virginia Elec. & Power Co., 18 Va. App. 569, 575, 445 S.E.2d 693, 697 (1994) (citing Manchester Bd. & Paper Co. v. Parker, 201 Va. 328, 330, 111 S.E.2d 453, 455 (1959)). Consequently, when the commission reviews a requested change to an award under Code § 65.2-708, that review is limited to the award currently in place, as opposed to evidence that might support establishing a new award. See Ilg, 54 Va. App. at 375, 679 S.E.2d at 549 (citing Williams, 18 Va. App. at 575, 445 S.E.2d at 697).

When employer filed its application for suspension/termination based on claimant's alleged unjustified refusal of selective employment, it did so pursuant to Code § 65.2-708 (review of award on change in condition) and Code § 65.2-510 (refusal of employment; compensation for partial incapacity). See Talley v. Goodwin Bros. Lumber Co., 224 Va. 48, 52, 294 S.E.2d 818, 820 (1982). When an employer initiates this type of application, the employer first bears the burden of showing "that the position offered is within the employee's residual capacity." Am. Furniture Co. v. Doane, 230 Va. 39, 42, 334 S.E.2d 548, 550 (1985) (citing Klate Holt Co. v. Holt, 229 Va. 544, 545, 331 S.E.2d 446, 447 (1985)). The claimant's "residual capacity" in this context is the capacity resulting from the compensable accident. Id. Once the employer has produced sufficient evidence to establish that it offered the claimant suitable employment relating to the compensable claim at issue, the burden then shifts to the claimant to demonstrate that she was justified in refusing that offer. Id. If the claimant raises a physical condition that is not currently the subject of an award, she bears the burden of demonstrating a causal connection between that physical condition and the compensable accident. See id. at 42-43, 334 S.E.2d at 550-51.

Here, claimant and employer submitted an agreement to pay benefits for claimant's ankle injury and related RSD, which the commission approved with an award order on February 14,

2008. Pursuant to Code § 65.2-701, that award became binding and enforceable on that date. Accordingly, the commission's review is limited to the award currently in place – the approved agreement for employer to pay benefits for claimant's ankle injury and related RSD – along with her alleged unjustified refusal of selective employment. See Williams, 18 Va. App. at 575, 445 S.E.2d at 697; see also Ilg, 54 Va. App. at 375, 679 S.E.2d at 549.

The process establishes that employer bore the initial burden to demonstrate that it offered claimant a position suitable to her residual capacity based on her ankle injury and RSD, alone. Doane, 230 Va. at 42, 334 S.E.2d at 550. However, contrary to the commission's affirmation of the deputy commissioner's decision, employer did *not* bear the burden to raise causation regarding claimant's seizures and "stress spells." Assuming without deciding that employer met its burden, claimant then bore the burden of proving that her refusal was justified. Id. If claimant's refusal was based upon her seizures and "stress spells," physical conditions that were not the subject of a current award, then claimant bore the burden of demonstrating a causal connection between those conditions and the compensable accident. See id. at 42-43, 334 S.E.2d at 550-51. Because of the transposition of the evidentiary burden pertaining to proving such a causal connection, we are unable to conclude from this record whether claimant was justified in her refusal to accept employer's offer.

Consequently, the commission erred in finding that employer's application failed because employer did not raise and disprove a causal connection between claimant's workplace accident and her seizures and stress spells. Accordingly, we reverse the commission's determination that the employer had the burden to raise causation and remand for reconsideration of employer's application.

## IV.  CONCLUSION

For the foregoing reasons, we reverse and remand to the commission for proceedings consistent with this decision.

<u>Reversed and remanded.</u>