UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Ortiz and Chaney
Argued at Lexington, Virginia


PIEDMONT FOUNDRY SUPPLY INC. AND
  CENTRAL MUTUAL INSURANCE COMPANY
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0689-21-3                      JUDGE ROBERT J. HUMPHREYS
                                                    JANUARY 18, 2022
AARON PENN


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Robert M. McAdam (Rachel A. Riordan; Kalbaugh Pfund &
              Messersmith, on brief), for appellants.

              Dale W. Webb (Kevin M. Gick; Frankl Miller & Webb, LLP, on
              brief), for appellee.


       Aaron Penn was injured in a compensable work-related accident on October 28, 2020,

and he subsequently received a temporary total disability award.  On April 21, 2021, his

employer, Piedmont Foundry Supply Inc., filed an application for a hearing to terminate or

suspend Penn's disability benefits.[1]  The Commission subsequently referred Piedmont's

application to the hearing docket (also referred to as "docketing the application"), but Penn

requested review by the Commission.  Pursuant to Penn's request, the Commission reversed its

earlier decision and removed Piedmont's application for a hearing from the docket.  The

Commission held that Piedmont's application did not demonstrate sufficient probable cause to

justify suspension of benefits and referral of the application to the hearing docket.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Pursuant to Workers' Compensation Commission Rule 1.4, once an employer's
application for a hearing is docketed by the Commission, the employer may cease paying the
employee's award until after the hearing on the merits.

On appeal, Piedmont argues that the Commission erred as a matter of law in determining that its application for a hearing did not establish probable cause to hold a hearing. Piedmont also argues that the Commission erred in finding (1) that the medical evidence was stale "and/or prospective," (2) that the doctors did not opine that the accident was unrelated to Penn's disability, and (3) that Dr. Torre did not exclude Penn's compensable injuries as a cause of his disability.

## I. BACKGROUND

While working for Piedmont, Penn suffered a compensable injury to his right leg and knee. The Commission approved an award agreement between Penn and Piedmont for temporary total disability and lifetime medical benefits for the relevant injuries.

On January 21, 2021, Penn was examined by Dr. Brian Torre, an independent medical examiner hired by Piedmont. Following the independent medical exam ("IME"), Dr. Torre wrote a patient report summarizing Penn's condition as of January 21. In the IME report, Dr. Torre noted that Penn had a history of chronic right hip pain due to "severe osteoarthritis." Penn's chronic hip pain predated his work-related injuries to his right leg and right knee. Prior to those injuries, Penn needed a total right hip replacement, but he was unable to receive one because he was morbidly obese. Dr. Torre wrote that the work-related injuries to Penn's right leg and knee had increased Penn's right hip pain, saying, "The change in [Penn's] symptomology is causally related to the subject accident. That means that the addition of pain from his buttock down the thigh . . . represents new symptoms, [sic] *related to the subject accident*." (Emphasis added). He also wrote that "Mr. Penn continues to be significantly limited by the additional pain from the subject accident. . . . At best, current treatment would hope to restore him to his previous level of impaired function due to his hip arthritis." In the same report, Dr. Torre wrote, "[G]iven the nature of [Penn's] arthritis and morbid obesity, [return to baseline] could easily take

up to five or six months. Six months post-injury is 04/20/21, at which time the effects of the hip sprain would physiologically reach baseline."[2]

On February 22, 2021, Dr. John, Penn's treating physician, filled out a questionnaire about Penn's condition. Dr. John opined that Penn's compensable work-related injury caused six months of disability "due to the aggravation of his previously diagnosed chronic osteoarthritis need for a hip replacement."

On April 21, 2021, pursuant to Workers' Compensation Commission Rule 1.4, "Employer's Application for Hearing," Piedmont applied for a hearing to terminate or suspend Penn's award. Piedmont asserted in its application that Penn's "current disability is unrelated to the industrial accident noted in Dr. Torre's report." The Commission subsequently docketed the application for a hearing. Penn requested review by the Commission, arguing that Piedmont's supporting documentation was inadequate to support referral to the hearing docket. The Commission agreed and reversed the referral. Piedmont motioned for reconsideration of the Commission's opinion, which was denied, and timely filed a notice of appeal to this Court.

## II. ANALYSIS

### A. STANDARD OF REVIEW

On appeal, whether an employer's application for a hearing has reasonably established probable cause for termination or suspension of benefits is a question of law which we review *de novo*. *United Parcel Serv., Inc. v. Ilg*, 54 Va. App. 366, 379 (2009) (finding as a matter of law that the evidence contained in an employer's application for a hearing did establish sufficient probable cause to refer the matter to a hearing).

---

[2] "Baseline" refers to Penn's physical condition as it was prior to the work-related accident.

B.  WHETHER PIEDMONT'S APPLICATION ESTABLISHED PROBABLE CAUSE

Piedmont contends that the Commission erred in finding that Piedmont did not establish probable cause in its application for a hearing.  Employer applications for termination or suspension of benefits hearings with the Commission are governed by Commission Rule 1.4, which states, "[a]n employer's application for hearing shall be in writing and shall state the grounds and relief sought."  Under the Commission's own interpretation of its rule, "[a]n employer's application for hearing will be deemed not 'technically acceptable' and will be rejected unless the employer's designated supporting documentation *is sufficient to support a finding of probable cause* to believe the employer's grounds for relief are meritorious."  *See Circuit City Stores, Inc. v. Scotece*, 28 Va. App. 383, 386 (1998).  Essentially, the Commission has interpreted its own rule as requiring employers, upon application for a termination or suspension hearing, to show that probable cause exists for terminating or suspending the injured employee's benefits.

The Commission defines its probable cause standard as a "reasonable ground for belief in the existence of facts warranting the proceeding complained of."  *United Parcel Serv.*, 54 Va. App. at 372.  In other words, an application for a hearing must indicate that there are grounds, as evidenced by supporting documentation, for believing that the employee no longer qualifies for the benefits he currently receives.  *See Circuit City*, 28 Va. App. at 386-87.  "Although the [Commission] does not require the employer to establish a *prima facie* case in order to effect the referral of its application to the docket, the examiner does weigh the evidence submitted by both parties in determining whether sufficient grounds exist to suspend benefits pending a hearing."  *Lawson v. Penske Trucking Co.*, JCN VA02000030797, slip op. at 3 (Va. Workers' Comp. Comm'n Feb. 19, 2020) (quoting *Crosby v. Cent. Coca-Cola Bottling*, VWC No. 155-72-93 (Va. Workers' Comp. Comm'n Aug. 18, 1998).  The Commission's probable cause standard serves as a "screening

- 4 -

device for eliminating obviously unmeritorious applications for hearings filed by insurers and employers." *See United Parcel Serv.*, 54 Va. App. at 372 (quoting *Dillard v. Indus. Comm'n of Va.*, 416 U.S. 783, 795 (1974)). The Commission's task below was not to determine whether based upon the submitted evidence Penn's disability award should be terminated, but simply whether Piedmont's evidence, if believed, justified a hearing regarding terminating or suspending Penn's benefits.

Here, the Commission reviewed Piedmont's supporting documentation and found that it did not establish probable cause that Penn's benefits should be terminated or suspended. As noted, we review the Commission's denial of the application *de novo*. *See id*. at 379. Therefore, the issue that this Court must determine is whether Piedmont's application for a hearing facially established facts that, if true, would justify a hearing for termination or suspension of benefits. *See Circuit City*, 28 Va. App. at 387. For the following reasons, we agree with the Commission's determination that Piedmont's supporting documentation did not meet the standard of probable cause sufficient to warrant a hearing on the termination of Penn's benefits.

The Commission first found that, contrary to the assertion in Piedmont's application, Dr. Torre did not opine that Penn's ongoing disability was causally unrelated to his compensable injuries and, similarly, Dr. John did not opine that Penn's disability was causally unrelated to his compensable injuries. On appeal, Piedmont contests this finding, arguing that the medical reports submitted in support of the application "never attributed the [c]laimant's ongoing disability with [sic] the work-related accident." Piedmont emphasizes that Penn's award order was only for injuries to his right leg and knee, not his right hip.

Upon reviewing the record, we find that the medical reports submitted by Piedmont pursuant to its application clearly indicate that Penn's continuing disability and his injuries were indeed related. On January 21, 2021, Dr. Torre stated, "[t]he change in [Penn's] symptomology *is*

*causally related to the subject accident.* That means that the addition of pain from his buttock down the thigh . . . represents new symptoms, [sic] *related to the subject accident.*" (Emphasis added). Although Penn's right hip was not listed in his award order, Dr. Torre explained in his IME report that Penn had severe, end-stage osteoarthritis in his right hip and that Penn's work-related injuries had caused the severe arthritic pain in his hip to increase "to a point where he is not able to perform his work duties." Dr. Torre plainly stated that the debilitating pain that resulted in Penn's disability was related to the compensable accident. Furthermore, Piedmont admitted as much at oral argument, where it conceded that "Dr. Torre, who performed the IME, arguably stated that [Penn] sustained an aggravation of the right hip . . . in this accident." Dr. John also opined that Penn's injury caused six months of disability because the injury aggravated Penn's previously diagnosed osteoarthritis. The supporting documentation explicitly supports the conclusion that Penn's injury and resulting disability were causally related.

Second, the Commission rejected Dr. Torre's opinion as stale because he last examined Penn three months prior to the filing of Piedmont's application. The Commission has held as a matter of policy that "medical evidence supporting an employer's application alleging a release to return to work 'must show that the claimant was able to return to his pre-injury work at *a time proximate to the date* that the employer filed its application for hearing.'" *Lawson*, JCN VA02000030797, slip op. at 3-4 (emphasis added). The Commission has a longstanding policy of rejecting stale medical evidence. *See id.* at 3. For instance, the Commission previously held that medical evidence that was more than three months old at the time of the filing of the employer's application was stale and insufficient to support referral of the application to the docket. *See McElvy v. Cottman Transp.*, VWC No. 216-32-07 (Va. Workers' Comp. Comm'n Oct. 20, 2004). The Commission has also found that an examination performed approximately five months prior to filing of the employer's application was stale and "of little value." *See Lawson*, JCN

VA02000030797, slip op. at 4. While it is certainly reasonable to broadly refuse to consider a medical opinion that is not a current assessment of a claimant's medical state, we do note that the Commission has so far failed to articulate a definitive standard for what constitutes staleness, which arguably makes it difficult for employers to ascertain prior to filing an application whether their supporting medical documentation is sufficiently current to warrant consideration.

In this instance, however, we agree with the Commission's conclusion that the supporting documentation was stale and not contemporaneous with the application for a hearing. Dr. Torre's last medical examination of Penn took place approximately ninety days before Piedmont filed an application for a hearing. Here, the three-month-old medical evaluation containing only a projected recovery date was clearly not "proximate in time" to the application. Healing from an injury is not necessarily a linear process; Penn may or may not still have been disabled due to his injuries when the application was filed.

Additionally, the Commission stated, "[t]o the extent Dr. Torre's statements can be interpreted as a release to pre-injury work in three months, that opinion is prospective." The IME was performed on January 21, 2021, three months prior to April 21, 2021, the date of the hearing application. The Commission has consistently held in prior cases that a doctor's release more than seven days from the examination is prospective and is not sufficient to establish that the claimant is able to return to work on some future date. *See Nickerson v. Coastal Chemical Corp.*, VWC No. 185-65-13 (Va. Workers' Comp. Comm'n Dec. 19, 1997). The Commission found that "[t]o the extent Dr. Torre's statements can be interpreted as a release to pre-injury work in three months, that opinion is prospective and does not establish the claimant's disability was unrelated to the work accident as of April 21, 2021." We agree that Dr. Torre's IME report, taken as a release to work, was indeed prospective because it was written months in advance of Piedmont's application.

In summary, we hold that Piedmont's application failed to establish probable cause sufficient to justify a hearing because the supporting documentation did not set out facts that, if believed, would justify terminating or suspending Penn's disability benefits. A thorough review of Piedmont's evidence shows that it was insufficient to prove a "reasonable ground for belief in the existence of facts" meriting a hearing. *See United Parcel Serv.*, 54 Va. App. at 372. Therefore, we affirm the Commission's determination that Piedmont's application did not establish the requisite probable cause for a hearing on the termination of Penn's disability benefits.

### C. ADDITIONAL ASSIGNMENTS OF ERROR

In its final three assignments of error, Piedmont merely repeats its earlier arguments that the Commission erred in finding that the medical evidence was stale "and/or prospective in nature," in finding that Dr. Torre and Dr. John did not opine that Penn's disability was unrelated to his compensable injuries, and in finding that Dr. Torre did not exclude Penn's compensable injuries as a cause of his disability. Essentially, Piedmont's additional assignments of error simply reiterate its argument that it established sufficient probable cause. Having already engaged and rejected these assertions above, we need not further address Piedmont's duplicative assignments of error. "Following the traditional doctrine of judicial restraint, [appellate courts] 'decide cases "on the best and narrowest grounds available."'" *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 438 (2020) (alteration in original) (quoting *Levick v. MacDougall*, 294 Va. 283, 302 (2017)).

### III. CONCLUSION

For the reasons stated above, we hold as a matter of law that Piedmont's application did not establish sufficient probable cause that a change in condition occurred with respect to Penn's continuing disability and affirm the decision of the Commission.

*Affirmed.*